OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY v. THOMAS HALL.

[FILED OCTOBER 21, 1891.]

| 33 | 229 |
| 54 | 11 |
| 54 | 563 |
| 33 | 229 |
| 56 | 131 |
| 56 | 572 |
| 33 | 229 |
| f59 | 589 |
| 33 | 229 |
| 62 | 574 |
| 62 | 665 |

1. **Verdict:** SHOULD BE SET ASIDE, WHEN. It is the duty of a jury to find its verdict in accordance with the law as given in the instructions of the court. When they clearly violate this duty, the court should set aside their verdict. The refusal of the court to do so upon proper application is reversible error. (See *Aultman v. Reams*, 9 Neb., 487; *Meyer v. M. P. R. Co.*, 2 Id., 342.)

2. ——: ——. A general verdict which is clearly inconsistent and in conflict with a special finding of fact submitted to the jury in the same case, should be set aside on motion.

ERROR to the district court of Gage county. Tried below before BROADY, J.

*J. M. Thurston, W. R. Kelly,* and *J. S. Shropshire,* for plaintiff in error, cited: *Secord v. R. Co.,* 18 Fed. Rep. [Minn.], 221; 3 Wood Ry. Law, p. 1505, sec. 392; *Robinson v. R. Co.,* 7 Gray [Mass.], 92; *Mad River R. Co. v. Barber,* 5 O. St., 568; *Summersell v. Fish,* 117 Mass., 312; Wharton, Negligence, [2d Ed.], sec. 237.

*R. W. Sabin, R. S. Bibb, contra.*

COBB, CH. J.

The plaintiff below, in his petition, alleges the incorporation of the defendant; that on the 4th day of February, 1889, he was in the employ of the defendant, and had been for a period of three years; that while in the employment of the defendant he performed the work assigned to him, but through no fault or negligence of his, one W. H. McLeary, who was also an employe of defendant, and was unloading coal from defendant's cars, carelessly and negligently threw a large and heavy lump of coal upon plaintiff's right hand, crushing the same, breaking the bones thereof, etc.; that during the period of his employment the defendant had retained twenty-five cents per month from his wages to create a fund for the purpose of paying its surgeons for surgical treatment of its employes who might receive personal injuries while in the service, etc.; that he was directed by the order of the defendant to report to the surgeon for treatment; that he submitted his hand to the examination and treatment of said surgeon; that the said surgeon thereupon set the bones and reduced the fracture, but did the same so carelessly, negligently,

and unskillfully that his hand has been crooked and out of joint, and the third and fourth fingers rendered useless, etc., whereby the plaintiff has been greatly injured and is unable to attend to his ordinary business, to his damage in the sum of $3,000.

For answer to this, defendant below made a general denial to the allegations to the petition, and further, that the plaintiff paid the twenty-five cents charged upon his salary voluntarily, and that the same was used to defray the expenses of his treatment; that he was treated skillfully and carefully, and that the surgeon was a skillful and careful surgeon, and thoroughly competent to treat the injury; that the plaintiff was guilty of contributory negligence. As an additional defense, a settlement with the plaintiff for his damages was alleged, and a release signed by him, absolving the defendant from any liability whatever on account of his injuries, was alleged and shown.

This was replied to, thus forming the issues upon which the case was tried.

There was a verdict for the plaintiff for $500.

A motion for a new trial was overruled, and judgment rendered on the verdict.

The defendant below alleges the following errors:

1. The court erred in admitting the reply to Q. 23, put to plaintiff.

2. Also to Q. 216, put to Dr. Wells.

3. Also to Q. 301, put to Cyrus Richardson; and in refusing to permit Cyrus Richardson to make answer to Q. 310.

4. In refusing to permit an answer to be made by Dr. Galbraith to Q. 693.

5. In overruling the offer of defendant to prove that Dr. Walden was a surgeon of ordinary skill and ability and was known to be such by each of the several witnesses.

6. In permitting the answers to be taken to Q. 988, 1019, 1027, 1043, as the same appear in the bill of exceptions.

7. In giving to the jury instruction No. 3, requested by the plaintiff.

8. In refusing to give instruction No. 1, requested by the defendant.

9. And instruction No. 3, requested by defendant.

10. And instruction No. 7, requested by defendant.

11. And instruction No. 8, requested by defendant.

12. And instruction No. 9, requested by defendant.

13. And in giving instruction No. 1, of its own motion.

14. And in giving instruction No. 3, of its own motion.

15. The verdict is contrary to law, to the evidence, and to the instructions of the court.

16. That the general verdict is contrary to law.

17. That the general verdict is not sustained by sufficient evidence.

18. That the general verdict is contrary to and not sustained by the special finding of the jury.

19. That under the verdict and the special finding returned by the jury the defendant was entitled to judgment, and the court erred in rendering judgment in favor of the plaintiff upon the general verdict.

20. Because the facts stated in plaintiff's petition are not sufficient to support a verdict in favor of the plaintiff under the special verdict returned herein.

21. Because the court erred in overruling the motion for a new trial.

Upon the trial the plaintiff testified that on or about the 4th day of February, 1889, he was in the employment of the defendant, and was engaged in building a wall; that at that time he had been in the employment of the defendant for about two years, getting $1.55 per day, working every day, Sunday included; that his particular business was wiping, but did other work occasionally, or when called upon; that at the time above stated, the master mechanic and general foreman of the defendant company, who had charge of the line and under whose direction

plaintiff was working, wanted him to "kind of" superin-
tend the piling of coal; that plaintiff "was simply build-
ing a wall and piling coal." Being requested to explain
to the jury about the wall which he said he was building,
and the coal which he was piling, said: "I suppose the
ground between the railroad tracks and the pile is twenty-
five feet, and we would run three cars on one side of that
pile and then three cars on the other side, and unload so as
to build it up even; I was doing the walling and build-
ing the wall; I knew that was pretty dangerous my-
self, and kept pretty close watch, and told them to watch
all the time; I could not watch for them. I was standing
between car and pile of coal; I was pulling a piece off the
pile to lay on the wall, and a man by the name of Mc-
Leary slung a piece out and struck me on the hand. I
had one hand on the piece of coal, and he threw a piece of
coal out and broke this hand." Being requested to explain
to the jury how, or to what extent his hand was injured,
he answered, "Well, as near as I can tell you, the point of
that hand lay literally mashed down, the piece of coal hit
me and mashed this part down (illustrating). I happened
to have on a pretty heavy mitten, or it would have been
worse for me." The following question was then put to
plaintiff:

Q. What injury did it do to your hand?

Objected to by defendant, as immaterial and inadmissi-
ble under the pleadings, which objection being overruled,
he answered:

A. Well, as near as I can tell, the joint of this large
finger is dislocated, also that one, and the smaller ones are
broken.

He further testified that he knew that he had to go to a
doctor; that he had to go to the office and get a ticket before
he could go; that he had to go to Hayes for a ticket; that
Beatty wrote him out a ticket to go to Dr. Walden; that
he went up to the office and Dr. Walden was not in at the

time; that Mr. Bates was there and dressed his hand; that Dr. Walden afterwards told him that Bates would attend to it any time he was absent. To the question, "What was done with it?" he answered, "He took a long piece of cloth and commenced wrapping it, and wrapped it all around and put a little piece of cotton batting in my hand and told me to grasp that, and wrapped a piece of bandage around it and gave me a bottle of liniment. There was nothing said about the wrist at that time. I don't think there was anything at that time; I did not know myself there was anything but a broken finger." To the question, "When did you go to see Dr. Walden about it?" he answered, "I think I went the next day, and then he dressed it." He went to the doctor every other day; went eight days. Then he asked the doctor when he thought he would be able to go to work; that the doctor, after inquiring of him if his work was hard, and being informed that it was not, and that he could do the most of it—wiping with his left hand—and that he would like to go to work as soon as the doctor thought him able to work, gave him a note to Mr. Hayes, and Hayes told him (plaintiff) to go into the house and go to work; that he went to work and worked six days; that on the 19th he went to Dr. Walden's office in response to a note from the doctor; that the doctor then examined his hand, rebroke, reset, and rebandaged the hand; that he carried the hand in splints and bandage until the 19th or 20th of March, when the doctor took them off; that he had been unable to work since that time; had tried to work but his hand would get lame, so he had to stop; that his hand pained him a great deal, and at times he could not sleep nights; that he carried his arm in a sling a little over four weeks after his hand was reset; that he went back to work the last time under Dr. Walden's order; that he kept going back and forth every few days; that Dr. Walden was railroad physician, as plaintiff understood; that plaintiff is fifty five years old,

is a married man, has a family of four, all depending upon him but one; that he has no means of support other than his labor; that he is as strong and able to do a day's work as he ever was were it not for his hand.

Upon re-examination plaintiff testified that Mr. Hayes told him to pile that coal up; that plaintiff was working under his direction; that the man who threw the coal there was working by the day the same as plaintiff.

There was other evidence introduced and given on the part of the plaintiff, corroborating his own testimony as to the manner in which the injury was inflicted, and in some degree the extent of the injury.

The defendant introduced Dr. Edward Bates, who testified that he is a resident of Beatrice, where he had resided over five years; that he is a practicing physician; had practiced something over five years; knows the plaintiff; knows Dr. Walden; has known him eight or nine years. Whereupon the following question was put to the witness: "Q. Do you know what his reputation is in this community as a physician and surgeon?" which question was objected to by the plaintiff, as incompetent and immaterial, and objection was sustained.

Dr. A. Walden was sworn and examined as a witness on the part of the defendant. He testified that he resided in Beatrice, where he had resided and practiced as physician and surgeon for twelve years; has practiced as such altogether for nearly twenty-eight years; was graduated by Rush Medical College, of Chicago; that his profession included surgery as well as medicine; that he took charge of the plaintiff's hand three or four days after the injury. The witness then described the injury to plaintiff's hand and its treatment by Dr. Bates and by himself, and declared it to be the correct and proper treatment in such cases.

W. I. Galbraith, a witness on the part of the defendant, testified that he resides in Omaha; that he is a surgeon;

had been practicing surgery for about twelve years; that he was acquainted with Dr. A. Walden, had known him for five or six years, and was familiar with his reputation as a physician and surgeon in Gage county. The following question was then put to witness: " Q. What is his reputation as to skill and competency as a physician and surgeon?" which question was objected to by the plaintiff, as incompetent and immaterial, and objection was sustained. Thereupon the defendant offered to prove by this witness that Dr. Walden, the physician and surgeon who treated the plaintiff, was a man of ordinary skill and competency as a physician and surgeon; that he is known to be such.

BY THE COURT: Do you allege they have claimed anything to the contrary?

MR. SHROPSHIRE: No, sir, I do not.

Objection sustained.

The court, upon its own motion, instructed the jury as follows :

"1. Plaintiff's action is based upon alleged negligence of defendant by which personal injury resulted to plaintiff, causing damage to plaintiff, for which plaintiff asks judgment. In order to find for the plaintiff you must find that defendant has been guilty of negligence or want of ordinary care and diligence as alleged in the petition.

"2. As to that part of the petition alleging that the surgeon of defendant did not as a surgeon properly treat the injury of the plaintiff, you are instructed that that allegation cannot be the basis of an action against defendant in this case in favor of plaintiff, because the petition does not allege that defendant failed to use due care and diligence in selecting a competent surgeon, or was guilty of any negligence in choosing a surgeon, or that the surgeon of the company did not possess the ordinary professional skill, learning, and qualifications for such position as surgeon of the company. Because the petition makes no such

averment of negligence on the part of defendant, the plaintiff's objection to defendant's offer to prove the good professional reputation and standing of Dr. Walden was sustained because it was not in issue and was not in answer to plaintiff's case, nor any new matter set up in the answer. However, for the purpose of preserving the fact that it may, if found necessary, be still utilized, a special finding will be submitted for you to answer as to whether the surgeon properly treated the plaintiff's injury."

The following instructions were given by the court at the request of the defendant:

"No. 2. The court instructs the jury that before the plaintiff can recover in this action, he must show that the injury complained of was caused by the negligence of the defendant railroad company, and that if the plaintiff has failed to show the negligence upon the part of said defendant railroad company, then the plaintiff cannot recover in this action, and your verdict must be for the defendant.

"No. 4. The jury are instructed that when a person enters into the service of a railroad company, he thereby undertakes to run all the ordinary risks incident to the employment, including his own negligence or unskillfulness, and that of his fellow-servants who are engaged in the same line of duty, provided the company has taken reasonable care and precaution to engage competent servants to discharge the duties assigned to them.

"No. 6. The court further instructs the jury that if they believe from the evidence that the plaintiff, at the time he received the injuries complained of in his petition, was at said time an employe of the defendant, and received said injuries by reason of the negligence of another, who at the same time was a fellow employe, and engaged at the same employment with the plaintiff; and if you further believe from the evidence that such employment or service bore such relation to each other, that the careless or negligent

conduct of one of said employes may endanger the safety of the other, that then such danger is incident to their employment, and that if one be injured by the negligence of the other, no recovery can be had for the injury.

"No. 5. If the jury believe from the evidence that at the time of the accident in question the plaintiff was in the employ of the defendant as foreman, or in charge of a gang of men unloading coal from the cars, and while so employed and in the line of his duty he received an injury resulting from the negligence or want of ordinary care and skill of W. H. McGory, who was at the same time engaged with the plaintiff in unloading coal from the same cars, then the court instructs the jury as a matter of law that the plaintiff and W. H. McGory were fellow-servants, engaged in the same grade or line of service, within the meaning of the law, and the defendant, if otherwise without fault, would not be liable for such injury."

. The defendant requested the court to give the following instruction, which was refused:

"No. 1. The court instructs the jury that, under the pleadings and the proofs in this case, the plaintiff is not entitled to recover, and you will find a verdict for the defendant."

There were other instructions given and refused, but which it is not deemed necessary to copy or to further refer to here.

The jury returned a verdict for the plaintiff and assessed his damages at the sum of $500; also the following special finding: "Did Dr. Walden in his treatment of the plaintiff's injury, as a surgeon use ordinary care, skill, and diligence for such professional services?   Answer. Yes."

If the petition states a cause of action against the defendant, it is either that the defendant was negligent in the act of McGavey (as he is called in the petition, but he is also called McGory in the instructions) in negligently throwing a lump of coal, striking and injuring the plaint-

iff's hand; or that the defendant was negligent in the act of its surgeon in the negligent and unskillful treatment of the said injury.

The fourth and sixth instructions given by the court at the request of the defendant, if followed by the jury, they could not find for the plaintiff upon the theory first above stated, upon the evidence in the case. It is not necessary to decide, nor do I, whether the law is correctly given in the said instructions. It is the duty of the jury in all cases to follow the instructions given them in charge by the court, and if they do not do so the verdict should be set aside and a new trial ordered. (See *Aultman v. Reams,* 9 Neb., 487; *Meyer v. M. P. R. Co.,* 2 Id., 342; *Jewett & Root v. Smart & Gillett,* 11 Ia., 505.)

In instruction No. 2, given by the court on its own motion, the jury were told that the allegations of the petition, that the surgeon of the defendant did not properly treat the injury of the plaintiff, cannot be the basis of an action against the defendant 'in this case in favor of the plaintiff, because the petition does not allege that the defendant failed to use due care and diligence in selecting a competent surgeon, etc.; but that for reasons then stated, it would submit a special finding to them as to whether the surgeon properly treated the plaintiff's injury. We have seen that special finding was submitted and found in the affirmative. Therefore, in addition to what has already been said, in speaking of the other supposed cause of action, if the verdict was based upon the negligence of the surgeon, it is not only contrary to the instructions, but also contrary to, and inconsistent with, the special finding of the jury.

The motion for a new trial should have been sustained.

The judgment of the district court is

REVERSED AND THE CAUSE REMANDED.

THE other judges concur.