THOMAS OUILETTE ET AL. *v.* JAMES DAVIS.

1. SUPREME COURT. *Errors assignable. Rulings favorable to appellant.*

   No objection can be made in this court by either party to rulings of the trial court which were favorable to, or made at the instance of, the party who appeals, and who alone assigns error.

2. EVIDENCE. *Examination of witness. Immaterial error.*

   Error cannot be predicated upon the action of the trial court in sustaining an objection to a question, if, during the further progress of the examination, and at the instance of both parties, the witness made a full statement of the matter inquired about.

3. SAME. *Objections must be specific.*

   A party whose evidence is rejected should show by his bill of exceptions its purport, in order that this court may determine its relevancy and competency. All reasonable intendment will be made against one whose objections in such case are not specific.

4. AGREEMENT TO SELL. *Title. Delivery necessary.*

   Under a written agreement by which one party agrees, in consideration of advances, to cut and deliver, and the other to buy, logs to be delivered

at a certain place, when the final payment should be made, the fact that advances generally have been made beyond the price of the logs, will not, of itself, in the absence of delivery according to the contract, operate to pass the title, and vest in the buyer the right to the logs.

5. LIEN OF LABORER.  *Seizure.  Act of 1884.  Confusion of goods.*

One who, under the act of 1884 (Laws, p. 84) is entitled to establish a lien on logs produced by his labor, does not lose this right because the logs have been, by his employer, mingled with others so as not to be distinguishable. He may, by a writ of seizure, establish his lien against the entire mass.

FROM the circuit court of Tunica county.

HON. R. W. WILLIAMSON, Judge.

James Davis sued out before a justice of the peace a writ of seizure, under the act of 1884 (Laws, p. 84), to enforce payment of a debt due him by one Miller for labor done in cutting and hauling certain saw-logs. The affidavit alleged that the logs were the property of Miller, and were in his possession. The writ of seizure, along with other writs against the same defendant, was levied on a large lot of logs, with which those produced by plaintiff's labor had been mingled. Before the return of the writ, Thomas Ouilette made affidavit claiming certain of the logs levied on, and he and William Curphy made affidavit claiming to jointly own certain others, and, by consent of counsel for the plaintiff, their bonds were filed as claimants' bonds, and the property seized was delivered to the claimants. Miller made no defense, but on the trial in the justice's court of the claimants' issue, the plaintiff recovered judgment, and the claimants appealed to the circuit court.

There seems to be no controversy as to the correctness of plaintiff's debt, and the fact that certain of the logs were produced by his labor. The contention of the claimants is that Miller, for whom the logs were cut and hauled by plaintiff, had sold them to one Leonard, who had sold them to claimants. The point was made by the plaintiff on the trial

that a claim could not be interposed to property seized under
the act of 1884, but the point was not sustained by the court.
The written contract between Leonard and Miller, under
which, it is claimed, the title to the logs passed to Leonard,
is set out in the opinion. Leonard testified at the trial that
he had advanced to Miller, under the contract, more than
enough to pay him for the logs. At the time the logs were
seized they had been delivered, pursuant to the contract, on
the bank of Coldwater river, but had not been cribbed and
rafted; but Leonard testified further that he had a general
verbal understanding with Miller that the logs, at the time of
the seizure, were his, Leonard's, property. There had, how-
ever, been no actual delivery thereof, and plaintiff had con-
tinued to cut and haul logs up to within a few days of the
levy.

The court refused to instruct peremptorily either for the
plaintiff or the claimants. For the plaintiff it instructed that
the written contract between Miller and Leonard, omitting
the interlineation quoted in the opinion, did not pass title to
Leonard, but was simply an agreement on the part of Miller
to sell, and Leonard to buy, the logs; and, further, that
plaintiff should recover, if Miller had not, prior to the levy
of the writ, sold the logs in good faith, and for a valuable
consideration, to Leonard.

For the claimants, the court instructed that, if, after the
written contract between Miller and Leonard was made, the
former agreed verbally with the latter, in addition to the said
contract, that the title of the logs should pass to Leonard
upon their delivery at the place where they were seized, and
that the logs were so delivered to Miller, and paid for by him,
the claimants should recover. The court refused an instruc-
tion asked for by claimants, to the effect that, when one pays
for personal property, the title passes to him.

There was verdict and judgment for plaintiff, and claim-
ants appeal.

---

*F. A. Montgomery, Jr.,* for appellants.

1. The claimant's issue is the proper remedy. Unless third parties whose property is seized under the act of 1884, can interpose a claim, they are without any adequate remedy. *Armistead* v. *Bernard*, 62 Miss., 180 ; *Woolner* v. *Spalding*, 65 *Ib.*, 204; *Pollard* v. *Stovall*, 60 *Ib.*, 266.

2. The act of 1884 contemplates that plaintiff shall proceed against the very property which his labor had produced. It creates no lien, but gives the plaintiff a right to establish a lien. The levy of the writ creates the lien, and, as it was not levied upon the specific timber, but on a large lot on which plaintiff had not labored, there was no lien acquired. *Frank* v. *Robinson*, 65 Miss., 162 ; *Westmoreland* v. *Wooten*, 51 *Ib.*, 825.

3. It was error to refuse witness, Leonard, the right to state why the interlineation had been made. A witness should be permitted to explain any act which, unexplained, would look suspicious. Starkie on Evidence, § 240.

The rule is, that one who pays for personal property obtains the title. Code 1880, § 1295.

Title vests in the buyer whenever every thing is done which is necessary by the contract to be done to complete the sale. The fact that something remains for the buyer to do, does not change the rule if the parties did not intend that this was necessary to complete the same. *Smith* v. *Sparkman*, 55 Miss., 649; *Pearson* v. *State*, 66 Miss., 510.

*Ira D. Oglesby,* for appellee.

1. A claimant's issue will not lie in a case of this kind. This remedy is purely statutory. *State* v. *Booker*, 61 Miss., 16; *Andrews* v. *McLeod*, 66 *Ib.*, 348.

2. The contract between Miller and Leonard was not a sale and purchase, but merely an agreement to buy on certain terms. The interlineation was obviously for the fraudulent purpose of so changing the contract as to vest title, but the interlineation was made after the lien of plaintiff had accrued by his levy.

3. The charges fairly presented the questions of fact to the jury, and the verdict is manifestly right and just.

*Lowe & Cochran,* on the same side.

Argued orally by *F. A. Montgomery, Jr.,* and *T. W. Brown,* for appellant, and *Ira D. Oglesby,* for appellee.

Cooper, J., delivered the opinion of the court.

The question whether a claim may be interposed to property seized under the proceedings authorized by the act of March 11, 1884 (Laws, p. 84), is not presented on this appeal. The appellee cannot assign error at all, for the judgment of the court below was in his favor, and he seeks in this court to maintain it. The appellant cannot assign as error the ruling of the court below that such claim can be interposed, for it was at his instance and in his favor that the court so ruled.

Upon the errors assigned, the judgment must be affirmed. The first assignment of error is to the action of the court in sustaining an objection to a question propounded to the witness, Leonard. The right of the claimants to the property seized, rested upon a purchase from Leonard, whose title depended upon the inquiry whether, before the levy of the plaintiff's writ, an executed sale of the property had been made to him by the defendant, Miller. A written contract, signed by Miller and Leonard, had been introduced in evidence, by which Miller agreed to sell and deliver, and Leonard to buy, a quantity of oak, ash and cypress logs at an agreed price. The material portions of this contract were as follows: " W. H. Miller agrees to cut, sell and deliver to the said Leonard, under splice, in the Coldwater river, five hundred thousand feet of cypress and one million feet of oak and ash logs. All timber to be cut 14 and 16-feet lengths, as much 16 feet as possible. All cypress and ash logs to be not less than 20 inches in diameter, top end; oak logs not less than 26 inches in diameter, top end. Timber to be

well rafted, either with spikes or pins, as said Miller may elect; no ash, sassafras or gum traverse poles to be used; no traverse poles to be less than 4 inches, top end, and uniform lengths to be rafted together; cribs to be put from 40 to 60 feet square. For this timber, so cut, delivered and rafted, Leonard is to pay the said Miller seven and one-half dollars for the oak and ash. All timber to be first-class, merchantable timber, such as will be accepted by the scaler of the Ouillette-Curphy Lumber Co., of Vicksburg, Miss. Leonard is to have this timber scaled for Miller once a month; he is to furnish Miller, monthly, such supplies and feed as Miller may need to do the work with. When the cypress is cut and skidded, Leonard is to pay Miller two dollars per thousand on it (and thereupon the title and possession shall pass to Leonard). When it is rafted he is to pay one dollar more per thousand on it. The oak and ash to be scaled on the bank of the river monthly, and, when so scaled, Leonard is to pay Miller four dollars per thousand on it (and thereupon the title and possession shall pass to Leonard). When it is rafted, as above described, he is to pay Miller one dollar more per thousand on it."

Leonard was introduced as a witness for the claimants, and testified that the contract as above set forth was the one signed by himself and Miller. He was then asked if it had been altered since it was signed, and replied that the portion included in parentheses had been interlined a few days before the trial, and subsequent to the levy of the writ of seizure. Counsel for claimants then asked him why such interlineation was made, to which the plaintiffs objected, and the court sustained the objection. This ruling is the ground of the first error assigned. The record discloses the fact that, though the court sustained the objection to the above question, the witness, on cross-examination by counsel for plaintiffs, and upon re-examination by counsel for claimants, fully explained the circumstances under which, and the purposes for which, the interlineation was made. It also appears that Miller, the

other contracting party, was examined as a witness for the claimants, and he too was fully interrogated in reference to the interlineations.

It would therefore be but an error in form, even if the question should have been permitted to be asked and answered, for the parties, at a subsequent stage of the examination, got the full benefit of the explanation they desired the witness to make. But we are not prepared to say that a party may thus except to the action of the court in excluding evidence. The proper practice is, for the party whose evidence is rejected to state and show by his bill of exceptions what the tenor of the proposed testimony was, in order that the trial judge, and this court on appeal, may determine its relevancy and competency. All reasonable intendment must be made against one who, by general language in a bill of exceptions, attempts to show error in the action of the trial court.

We find no fault with the instructions given, and perceive no error in refusing those refused. It may be true that, ordinarily, one who pays for property thereby becomes the owner thereof. But, under the facts of this case, the instruction by which this principle was announced would have been well calculated to mislead the jury. Certainly, under the written contract, there was to be no delivery of the property until it was in the river, cribbed and prepared for rafting. The final payment was not to be made until then, and though it may be true that Leonard had advanced to Miller, in money and supplies, more than the price of the logs, this was not necessarily a payment for the logs, under the contract, so as to vest title in Leonard. On an accounting Miller may have been indebted to Leonard in a greater sum than the value of the logs, and yet the logs have remained his property.

The controversy in the court below seems to have been waged upon the point of a delivery by Miller to Leonard before the levy of the plaintiff's writ, and upon this issue the claimants properly lost.

There is a suggestion of a defense in the evidence, upon the ground that if, in fact, Miller had not delivered the logs to Leonard under his contract, he was nevertheless estopped to deny title and possession in the claimants by reason of standing by and seeing them deal with Leonard as owner, and buy and pay for the logs. The witnesses several times approached this defense, but veered or were diverted from it. The plaintiff could subject to his demands the property seized only while it remained that of Miller, and it was essential that his lien should be fixed upon it before any intervening right or equity of third persons had attached. *Frank* v. *Robinson*, 65 Miss., 162. And if Miller should have been estopped to claim the property as against the claimants, so also would be his creditors. But no prominence was given to this defense and no instruction asked concerning it. The evidence in its support was not strong enough to warrant the giving of the peremptory instruction asked by the claimants, and in no other form is it presented by the record.

The contention of the appellants that the lien of the laborers could not be fixed upon the mass of logs, because no one was able to distinguish those cut or hauled by himself, is not tenable.

*The judgment is affirmed.*