MISSISSIPPI CENTRAL RAILROAD COMPANY *v.* CONNER.

[75 South. 57, Division B.]

1. BANKS AND BANKING.  *Pleading.   Petition.   Sufficiency.   Special deposit.   General deposit.*

All deposits in a bank are *prima facie* general deposits; the *sine qua non* of special deposits is that the identical money deposited is to be kept apart from the general funds of the bank, to be returned to the depositor or paid to some other person designated when the money is deposited.

2. SAME.

Where a petition is filed in the chancery court claiming a prefer·
ence over the general creditors of an insolvent bank on the
ground that a deposit was a special deposit, such petition is de-
murrable if it fail to specifically allege facts which show that
the deposit was a special and not a general deposit.

3. BANKS AND BANKING. *General deposits. Special deposit.*

Where a railroad company under arrangement with a bank used
it as a depository for the weekly receipt of its local office, to
be held by it until the end of the week, when the railroad com-
pany checked it out and transferred it to its regular depository
without any agreement that the identical money deposited was
to be kept apart from the general funds of the bank, in such
case the deposit was not a special deposit and the railroad com-
pany was not entitled to preference over general creditors of
the bank when the bank became insolvent.

APPEAL from the chancery court of Adams county.
HON. R. W. CUTRER, Chancellor.

Petition seeking the probate of a claim by the Mis-
sissippi Central Railroad Company against L. P. Con-
ner, receiver of the First Natchez Bank. From a
decree sustaining a demurrer to the petition, and dis-
missing the petition, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*S. E. Travis,* for appellant.

The petition, as we submit, presents several grounds
of relief. In the first place, the deposit in the First
Natchez Bank was in the nature of a special deposit,
impressed with a trust, and the title thereto was never
in the First Natchez Bank and did not and could not
pass to the receiver. As seen, it is admitted by the
demurrer that the funds in question were "never de-
posited with the said First Natchez Bank to be checked
on generally and as a checking account in the usual
course of business." It is admitted that the said funds
were deposited with the said First Natchez Bank
pursuant to an agreement by which the same were to
be held for safe keeping until the end of the week in

which the deposits were made, and then transferred to appellant's regular bankers, said First National Bank of Commerce. It is admitted that said funds were deposited in and held by the said First Natchez Bank "solely in the manner and for the purposes" stated. And it appears from the custom adopted relative to the transfer of the funds to appellant's regular banker that they were never checked against generally. The whole of the weekly balance was transferred by check in each instance each week without a single exception during the whole time special deposit had been so made. Such being the case, the title to the fund never passed to the First Natchez Bank or to its receiver holding no better title than it had, and the chancellor erred in not approving the account with priority of payment as prayed for. The following authorities show this: 7 Corpus Juris., pages 631-632, 660; Zane on Banks & Banking, page 283; 5 Cyc., page 515; *Armour* v. *Bank,* 69 Miss. 706, (Opinion); *Smith* v. *Bank,* 30 L. R. A. (N. S.) 517, (Syllabus); *Ryan* v. *Phillips,* 44 Pac. 909 (Syllabus); *Bank* v. *Mining Co.,* 46 N. E. 202 (Syllabus); 8 Corpus Juris., page 539, 542; 7 Corpus Juris., page 681 (Note); *Parker* v. *Reddicek,* 7 A. S. R. (Miss.), 647; *Hubbard* v. *Supply Co.,* 4. L. R. A. (N. S.) 132; *Ryan* v. *Phillips,* 44 Pac. 909 (Syllabus); *Bank* v. *Mining Co.,* 46 N. E. 202 (Syllabus); 8 Corpus Juris., page 539, 542; 7 Corpus Juris., page 681 (Note); *Parker* v. *Reddick,* 7 A. S. R. (Miss.), 647; *Hubbard* v. *Supply Co.,* 4 L. R. A. (N. S.) 132; *Romanski* v. *Thompson et al.* 11 So. 828.

In the third place there are lines of authorities supporting appellant's claim for priority of payments on at least three other grounds; namely, 1, the making of the check operated as an assignment of the fund *pro tanto;* 2, that the making and presenting of the check operated as a transfer of the fund to the holder; and 3, that the making and presenting of the check operated as an equitable assignment of the fund. The

authorities supporting these three propositions, as well as those supporting the two points first discussed, so overlap each other that it is deemed sufficient to submit a few excerpts from them generally on the points involved. *Bank* v. *Keith*, 56 N. E. 179 (Ill.); *Wyman* v. *Bank*, 48 L. R. A. 566 (Opinion); *Ill. Hotel Co.* v. *Bank*, 63 Am. St. Rep. 271; *Ill. Hotel Co.* v. *Bank*, 39 L. R. A. 481 (Ill.); *Bank* v. *Trust Co.*, 23 L. R. A. 611 (Ill.); *Bank* v. *Jones*, 31 Am. St. Rep. 403, (Ky.); *Commonwealth* v. *Distillers, etc., Co.*, 116 S. W. 766 (Mo.); *Savings Institution* v. *Ade*, 8 Fed. 106 (Neb.); *John Fonner* v. *Smith*, 11 L. R. A. 528; *Neb. Bank* v. *Bank*, 77 N. W. 346, 43 L. R. A. (N. S.) 100, 67 L. R. A. 617; *Kaesemeyer* v. *Smith*, 43 L. R. A. (N. S.) 101 (Note); *Bank of Cincinnati* v. *Coates*, 8 Fed. 542-3; *Schuler* v. *Leclede Bank*, 27 Fed. 427; *Bank et al.* v. *Schuler* (U. S.), 30 L. Ed. 701; *Ryan & Sons* v. *Paine*, 66 Miss. 678; *Merchantile Co.* v. *Packing Co.*, 69 So. 294 (Miss.); *Stoller* v. *Coates*, 88 Mo. 514; *Northumberland Bank* v. *McMichael*, 51 Am. Rep. 530; *Plumas Co. Bank* v. *Bank of Rideout, etc.*, 47 L. R. A. (N. S.), 553-4 (Note), 5 Cyc., page 560; 7 Corpus Juris., page 734.

We respectfully submit that the decree of the lower court should be reversed, and that judgment should be entered here allowing the claim with priority of payment, as prayed for, or, in the event the appellant is not entitled to this relief, then that the cause should be reversed and remanded with direction to the lower court to allow the claim with priority of payment.

*Chas. F. Engle* and *L. T. Kennedy*, for appellee.

The instant case is one purely and simply of an ordinary general deposit. Turn it and twist it as you may, the fact remains that appellant's agent at Natchez deposited his collections daily in the bank just as any ordinary depositor did, that these funds were credit-

ed to appellant's account just as the funds of other ordinary depositors of the bank were credited and that these funds went into the cash of the bank just as other deposits did, without any ear-marks or special designation whatsoever to identify them or to distinguish them from any other deposit made in general course of business.

Appellant could not by surrounding the manner in which it withdrew these deposits with "frills and furebelows" and circumlocutions and involved methods add to or detract from the obligation of the bank or make that obligation any less or any more than the bank's obligation to any general depositor, namely: To pay the check, draft or other order when presented, if the depositor had on hand sufficient funds to his credit.

Neither could the appellant by adopting any particular or peculiar method of its own in withdrawing its deposit add to or take from the liability of the bank or make that liability and different than the bank's liability to any other depositor for failure to pay the check, draft or other inland bill or exchange when presented; namely in case of an insolvent bank in hands of receiver, to get the *pro rata* distribution allotted to other depositors.

The bill says that appellant had an "arrangement" that its agent at Natchez would make these deposits daily and at the end of week appellant would draw out the deposits. This "arrangement" is no more than the arrangement any general depositor makes when he puts his money on deposit to his credit. He can draw it out when and how and in what manner he pleases. So could appellant draw out the deposit hourly, daily, weekly, monthly or yearly. The "arrangement" so called was only for the benefit of appellant, who was simply making a convenience and a use of the bank without any corresponding benefit flowing to the bank as in the case of depositors who kept a balance with the bank. This court certainly can have no patience with a conten-

tion that such a depositor who was getting all in the way of service and giving nothing in the way of benefit, compared with the depositor who maintained a regular balance, should be paid by preference and priority over that depositor. This case presents for discussion no principle which is new to this court.

There is no potent charm in the allegation that appellant's Hattiesburg Bank sent appellant's check to the First Natchez bank in time for the check to have been paid before suspension of business by the latter.

No matter how appellant may state its case; no matter how long the circumference of the circle it travels to get from the point where it made the deposit back to the point where it tried to withdraw the deposit appellant is always traveling in a circle. "There is no such magic in the word "trust" as to convert all the assets of a bank into a fund to secure one who deals with it for convenience of collecting claims or we might add, convenience of conducting its business in preference to others who trust it and deal with it." From decision CAMPBELL, C. J., in *Billingsley* v. *Pollock,* 69 Miss. 759, 13 So. 828, 30 Ann. St. Rep. 585. Above case was quoted with approval by this court in *Alexander County National Bank* v. *Conner* 70 So. 327.

The closing words of that decision state the law in this case: "The appellant in this case has no lien whatever on any money or assets in the hands of the receiver, but is simply a general creditor of defunct bank and should be treated as such."

Cook, P. J., delivered the opinion of the court.

This is an appeal from the chancery court of Adams county. The appellant sought in the court below, by petition as amended, to have its certain claim against the said First Natchez Bank probated and allowed with priority of payment, or as a preference claim. The receiver demurred to the petition, and final decree

was entered sustaining the demurrer and dismissing the petition, from which adverse decree the appellant prosecutes the appeal.

The avertments of the petition are these:

"That prior to the said 29th day of October, 1913, the said petitioner, through arrangement with the said First Natchez Bank, used it as a depository for the receipts of its said Natchez station and office. Such arrangement existed for a long time and until the said First Natchez Bank ceased doing business and went into the hands of a receiver as aforesaid. Under and pursuant to this arrangement, the local agent of the petitioner at its said Natchez office made daily deposits of the cash and funds received by him through such agency at said Natchez station and office in said First Natchez Bank, to be by it held for safe-keeping until the end of the week, when petitioner checked it out and transferred it to the banks and institution with which it did its regular banking business. The said cash and funds were never deposited with the said First Natchez Bank to be checked on generally and as a checking account in the usual course of business, but solely in the manner and for the purpose aforesaid. That on October 24, 1913, the said First Natchez Bank had on deposit to petitioner's credit deposited with it by petitioner's local agent at Natchez, under the agreement aforesaid, during the week next preceeding, the sum of one thousand nine hundred, thirty-three dollars and twenty-six cents, and on the 25th day of October, 1913, the said petitioner made its usual and regular weekly check upon said First Natchez Bank for said sum of money and delivered said check to the First National Bank of Commerce, of Hattiesburg, Miss., its regular banker, for credit of its account in the usual course of trade, and its account was so credited with the amount of said check, and the said First National Bank of Commerce became and was the *bona fide* holder thereof for value, and when the said check was so returned to the said First National Bank

of Commerce, it charged the amount of same to petitioner, and petitioner became the owner thereof. Petitioner is informed and believes, and from such information and belief charges the fact to be, that the said First National Bank of Commerce, in its usual course of business with the said First Natchez Bank, on the said 25th day of October, 1913, forwarded by United States mail, postage prepaid, and properly addressed, the said check, to the said First Natchez Bank for collection. That said check reached the said First Natchez Bank not later than the morning of October 27, 1913, and that the said First Natchez Bank continued doing business with funds on hand to meet said check through October 27, 28, and until it closed on October 29, 1913, and did not remit to the said First National Bank of Commerce, as its custom had been before that time, to cover said check, but, upon the contrary, returned the said check to the said First National Bank of Commerce without paying the same and with the notation 'Bank Closed.' A true and correct copy of the said check, together with the indorsement thereon, is filed herewith as a part hereof as Exhibit A hereto.''

The said check filed as Exhibit A is as follows:

''No. 290. $1,933.26. October 25, 1913. The First Natchez Bank of Natchez, Miss.: Pay to First National Bank of Commerce, or bearer, nineteen hundred thirty-three 26/100 dollars. Mississippi Central Railroad Co., per R. K. Smith, Second Vice President.''

On back of check: ''Bank Closed.'' On end of check: ''Chas. Ehlers.''

The petition further claims that the making and delivery of the said check operated as an assignment and appropriation of said fund; that by reason of the facts set out, the said fund became the absolute property of the appellant; that the title thereto did not pass to the receiver; and that appellant was entitled to recover the same in full as prayed for, etc.

All deposits, general or special, made in banks, are placed in banks for "safe-keeping," and so the averment in the petition that the money deposited by the agent of appellant was "to be held for safe-keeping until the end of the week" has no peculiar significance.

The distinctive feature, the *sine qua non*, of a special deposit is that the identical money deposited is to be kept apart from the general funds of the bank, to be returned to the depositor or paid to some other person, designated when the money is deposited.

The petition in this case does not aver that the identical money deposited was to be kept and paid over to the railroad company. It merely avers that an arrangement was made whereby the agent of the company at Natchez was to make daily deposits in the First Natchez Bank "to be held by it for safe-keeping until the end of the week, when petitioner checked it out and transferred it to" its regular depository. We think that this averment fails to fasten on the money deposited the distinctive feature of a "special deposit" or bailment. It seems to us that the petition simply sets out an agreement that the agent at Natchez was to deposit to appellant's credit the funds collected for his principal, and that the bank could have the use of the funds for the current week, at least, nothing appearing to the contrary; but it was further understood that at the end of the week the railrad company reserved the right to check out the fund and transfer same, to the banks which it was using as a regular depository.

It occurs to us that by the definite terms of this agreement between the railroad company and the Natchez Bank a right was reserved to the bank, rather than a limitation placed upon the right of the bank to use the money. In other words, it appears sufficiently clear that no bank, without some averment to the contrary, would care to act as the depository of a railroad company without a reward, knowing that the railroad company had a regular depository, and that it would at

any moment deposit money solely for its own con-
venience, for the purpose of immediately transferring
same to its regular banker, and so this contract pro-
vided for week-end transfers.

The petition does not aver that the identical money
deposited was to be paid over, or transferred to, the
Hattiesburg bank. On the contrary, the arrangement
contemplated a weekly check passing through the regu-
lar channels, to be paid in the usual way; that is to say,
by the Natchez Bank sending its draft on some other
bank, which would be collected by the Hattiesburg
bank and placed to the credit of the railroad company,
and this was the course pursued in the present instance.

"If the agreement between the parties is that the
identical coin or currency shall be laid aside and re-
turned, then it is a special deposit. But if the agree-
ment is that the money shall be returned, not in the
specific coin or currency deposited, but in an equal
sum, it is a general deposit. In either case the money
is deposited for safe-keeping, and the only distinction
between the two kinds of deposit is in the character of
the return that is to be made, [and] whether it shall
be returned in the identical thing deposited or in kind."
*Warren* v. *Nix,* 97 Ark. 374, 135 S. W. 896.

The above case draws a simple and comprehensive
distinction between general and special deposits, and is
in line with all the authorities we have examined. Test-
ed by the definitions given by the supreme court of
Arkansas, the petition in the present case does not aver
that the deposit was special or that the identical money
was to be returned. But, as we understand the plea, the
only thing that can be termed special or distinctive in
the arrangement is that the Natchez Bank would not be
required to account, except by weekly transfer of ac-
counts. We think it is clearly the law that all deposits
are *prima facie* general deposits to be used by the bank,
and it must appear by affirmative and specific averment
that the deposit was a special deposit; and if it does not

so appear, the plea is demurrable. The authorities defining "special deposits" and differentiating special from general deposits are collated in volume 7, Words and Phrases, title "Special Deposits," and volume 4, Second Series, of same work. Also in volume 3, R. C. L., section 146 *et seq.* Judge CAMPBELL, in *Billingsley* v. *Pollock,* 69 Miss. 762, 13 So. 828, 30 Am. St. Rep. 585, speaking of special deposits, but calling them trust funds, expressed the views of this court by saying:

"We should not be beguilded by the use of words, and call one claim a 'trust,' in order to secure it a preference over 'debts.' wherever there is a trust, it may be enforced as such, but calling one sort of claim a trust merely to place it on a better footing is not allowable. It has been done in some instances, where hard cases have made bad precedents, which we will not follow."

No doubt cases may be found wherein some courts have declared certain deposits in insolvent banks special deposits, "which we will not follow." In the present case the appellant probably said all that could be said in its petition consistent with the facts, and, treating the averments of the petition as true, we think, with the learned chancellor, that appellant has not made out a case which has entitled it to a preference over the general creditors of the insolvent bank.

*Affirmed.*