## SAWYERS v. CONNER.

[75 South. 131, Division B.]

1. BANKS AND BANKING. *Special deposit. Rights of depositor.*

Where a depositor in a bank refused to permit the proceeds of a check to be deposited either to her checking account or her savings account but informed the cashier that the deposit was for the purpose of paying a contractor for building a house, whereupon the cashier gave her a special receipt bearing the words "S. P. Dept." In such case the deposit was a special deposit, and the money was charged with a trust in favor of the contractor, and the bank did not take title to the proceeds of the deposit.

2. BANKS AND BANKING. *Special deposit. Right of depositor.*

In such case, the depositor was entitled to a preference against the receiver of the bank for such special deposit.

APPEAL from the chancery court of Adams county. HON. R. W. CUTRER, Chancellor.

Suit by Mrs. Mary Sawyer against L. P. Conner, receiver of the First Natchez Bank. From a decree dismissing the petition, the complainant appeals.

Appellant, Mrs. Sawyer, a resident of Natchez, Miss., was the owner of a house covered by a policy of fire insurance in the Caledonia Insurance Company. There was damage by fire, the loss was adjusted, and appellant received a check from the insurance company for the sum of five hundred and fifty dollars in settlement of the loss. She awarded a contract to one McClutchie for the said sum of five hundred and fifty dollars to repair the house. The check from the insurance company was received before the contractor had completed his contract to restore the building. Mrs. Sawyer has an adult daughter, Miss Margaret H. Sawyer, who carried the check of the insurance company to the First Natchez Bank and explained to the assistant cashier that her mother desired the check to be collected and the proceeds placed in the bank for the special purpose of paying Mr. McClutchie, the contractor. At that time, Mrs. Sawyer had an account in the savings department of the First Natchez Bank and a credit to her savings account of about one hundred and thirty-five dollars. Miss Margaret Sawyer also had two accounts at the bank, one a checking account and the other a savings account. When she presented the check to the officer of the institution, something was said about whether the proceeds of the check should be credited on her mothers passbook or upon either of Miss Sawyer's accounts, and, in response to this inquiry from the bank officer, Miss Sawyer declined to permit any entry of the check to be made either upon her mother's savings account or upon Miss Sawyer's account. Thereupon the officer of the bank executed upon a blank form the following receipt:

"First Natchez Bank, Natchez, Miss., Oct. 11, 1913. Mr. E. Sawyer: Yours ——— received. We credit your account: Sp. Dept. $550.00. All items credited subject to payment. Respectfully, G. S. Pintard, Cashier. (For the collection of all items payable outside of

this city, the First Natchez Bank will observe due dili-
gence in its endeavor to select responsible agents, but
will not be liable in case of their failure or negligence,
or for loss of items in the mail.)''

The greater portion of the language of this receipt
appears in printed form, but the words ''Sp. Dept.''
were written, and the undisputed testimony shows that
this was written for ''special deposit.'' The deposit as
shown by the receipt was made October 11th, and the
bank failed October 29th thereafter. On the day the
bank failed, Miss Margaret Sawyer went to the bank
and made a deposit of fifteen dollars on her mother's
savings account and had the same entered upon the
passbook. The testimony shows that at that time she
again called the bank's attention to the fact that Mr.
McClutchie, the contractor, would complete his job in
a few days, when she would come around and withdraw
the deposit for the purpose of paying him. Her testi-
money is to the effect that the assistant cashier again
assented to this special arrangement, and that neither
she nor her mother knew that the bank was insolvent.
It is shown that, at the time the deposit was made, the
bank was hopelessly insolvent and that the officers of the
bank had knowledge of this fact. The check from the
insurance company was forwarded to the Seaboard Na-
tional Bank of New York for collection, it being then
one of the correspondents of the First Natchez Bank,
and the proceeds of the check were credited to the ac-
count of the First Natchez Bank on the books of the
Seaboard National Bank. When the First Natchez
Bank closed its doors, there was a balance to its credit
in the Seaboard National Bank of four thousand five
hundred and twenty-one dollars and thirty-nine cents,
which amount was collected by the receiver. After the re-
ciever was appointed, notice was given to all creditors
to appear and probate their accounts, and Mrs. Sawyer
probated her account, not only for the $550 special de-
posit, but for the balance due her in the savings de-

partment, and at the time this controversy was tried to the chancellor she had received a ten percent. dividend, paid to all depositors whose accounts had been duly probated. She presented an ancillary petition to the court seeking a preference for the said sum of five hundred and fifty dollars upon the ground that it was a special deposit and also upon the further ground that it was fradulently obtained from her by the officer of the bank with full knowledge of the bank's insolvency. The petition was answered, evidence both for petitioner and the receiver introduced, and a decree was entered by the chancellor dismissing the petition and declining to award appellant a preference. From this decree she prosecutes this appeal.

*Truly & Truly,* for appellant.

The contention is made that a special deposit can only be where some particular article, as, for instance, a bond, a roll of money, or specific pieces of valuable property are deposited simply for safe keeping, the identical deposit or article to be returned to the depositor. Undoubetly such deposits are special as contradistinguished from general, because by making a deposit of a specific article which is ultimately to be specifically returned, the relationship of bailor and bailee is established. But this relationship is established by operation of law. There is, however, another equally as well established class of special deposits which arise by agreement or contract. As was pointed out in the original brief for appellant, strongly supported by authorities, special deposits arise by contract, which contracts are to be construed as others simply to ascertain the intention of the parties contracting. *Fogg* v. *Tyler,* 82 A. 1008.

Counsel for appellee further contends that the deposit made by appellant was not a special deposit, because it was not intended or contemplated that the identical

check was to be returned, but that the proceeds were to be returned. To show that this position is unsound we refer again to the Carr case in which the check was deposited with the distinct understanding that its proceeds were to be collected and the proceeds were to constitute the special deposit. We also show to the court that in the case of *Carlson* v. *Kies,* 134 Pac. 808, 47 L. R. A. (N. S.) 317, the receipt evidencing the special deposit itself specifically provided that the identical money which formed the subject of the special deposit was not to be returned, but, in the language of the receipt itself, after certain papers had been received, "then same to be forwarded by bank draft." In that case a sum of money was deposited as a special deposit, but the identical currency was never intended to be returned, but the amount of the deposit was to be paid out, or, as shown by the receipt, "to be forwarded by bank draft." In that case the supreme court held that the depositor was entitled to recover his deposit notwithstanding the fact that the deposit had been made under an agreement which did not contemplate the return of the identical money, but specifically provided a method of disbursement, and notwithstanding the further fact that the money itself had been commingled with the general funds of the bank. The opinion in that case not only supports the contention of appellant, but deals elaborately with the rights of depositors making special deposits, or deposits for special purposes. In truth we respectfully submit that it is now the recognized rule that an agreement that a deposit shall be a special deposit cannot be defeated by either the fraudulent misappropriation of the proceeds of the deposit, or by a commingling of them with the funds of the bank. *Shopert* v. *Indiana National Bank,* 83 N. E. 515; *Wagner* v. *Citizens Bank & Trust Company,* 122 S. W. 245; *Continental & Commercial Savings Bank* v. *Chicago Title & Trust Company,* 199 Fed. 704; v. *Chicago Title & Trust Company,* 199 Fed. 704;

*Exhbach* v. *Byers,* 164 Ill. App. 449. A general deposit may, by agreement, be converted into a special deposit. *State* v. *Grills,* 83 Atl. 281.

We submit that the rule here announced is clearly applicable to the case at bar, falling within the announcement of *Fogg* v. *Tyler,* that a special deposit is not required to be in any particular form being simply a matter of intention and understanding between the parties. *Bottcher* v. *Colorado National Bank,* 24 Pac. 582.

/ We hope, at least, that the officer of the bank received this deposit as a special deposit because of his knowledge that by so doing the rights of the widow and orphan would not suffer in the disaster to the bank which he then knew was immediately impending at all events, whatever motive actuated him, the deposit was accepted as a special deposit. The minds of the contracting parties met. The deposit was tendered as a special deposit; was accepted as a special deposit and being a special deposit segregating it from the general funds of the bank. The check was simply to be collected and the proceeds held for a few days as a special deposit for a specific purpose. There was no other way in which the rights of the depositor could be safeguarded. Every requirement of law was fulfilled. We submit, therefore most earnestly that upon either and both of the grounds suggested the appellant is entitled to a decree in this honorable court upholding justice, righting wrong, and granting relief.

*L. T. Kennedy,* for appellee.

Under the pleadings in this cause appellant cannot recover, unless she establishes that the deposit was a special deposit, but inasmuch as counsel urges two other propositions one directly and the other by inference, first, that the deposit was fraudulently received; second, that appellant had a lien on the money in

the hands of the Seaboard Bank to secure the payment of her five hundred and fifty dollars on account of a resulting trust, we shall reply to those contentions also.

The record shows beyond dispute that the appellant deposited a check with the First Natchez Bank on October 11, 1913. This was either a general or special deposit.

The distinction between a special deposit and a general deposit is generally held to be that the subject of a general deposit is mingled with the general assets of the bank, whose property it becomes and its separate identity is lost and the relation between the bank and the depositor is that of debtor and creditor; while the subject of a special deposit is to be kept safely separate and distinct from the general assets of the bank, as the title remains in the depositor who is entitled to receive back the identical thing deposited and the relation assumed between depositor and the bank is that of bailor and bailee. (1913-E, Ann. Cas. p 45.

A special deposit must not be confused with an ordinary deposit for a special purpose. We submit that a special deposit could not be made of a check, such as was the one in this case. The check carried to the first Natchez Bank by appellant, or her daughter, was deposited with the First Natchez Bank and she received a credit memorandum in which it was specifically stated that her account was credited with five hundred and fifty dollars. Neither the depositor nor the bank official at that time contemplated the return of the check to the depositor, nor was it contemplated that the First Natchez Bank would collect the check and place aside the proceeds thereof to be returned to the depositor.

Special deposits may be made of bonds, stocks, monies and other property to be kept in specie, but a special deposit cannot be made of a check whereby the bank in which it is deposited would become liable for the amount of the check.

We admit that a depositor could leave a check in a bank with the understanding that the check was to be returned but appellant does not contend that she left this check with the First Natchez Bank to be held until she called for it, nor does she now seek to recover the check.

Appellant's claim of a special deposit is based solely on the fact that she contends a receipt was issued to her making the account special, and further that she deposited the money for a special purpose.

In answer to this: "Although a deposit is marked 'special' in the depositor's pass book, it may be shown to be general. *Carr* v. *State,* 104 Ala. 43."

"Thus a deposit is not made specially by the addition alone of qualifying words to the name of the depositor, such as 'clerk.' 9 So. 732; 13 L. R. A. 659; 1913-E Ann. Cas. 46.

The bank was not directed to pay the money to Mr. McClutchie, the contractor. If making a deposit for a special purpose created a special deposit, it would then be impossible for a bank to ascertain what deposits were to be used and what deposits were not to be used by it.

We submit that this is a general deposit for a special purpose and does not give a preference. If it were a preference then all depositors could state that what money they had in the bank was put there for a specific purpose and as a result would have preference and inasmuch as the bank is insolvent, the preferred claims would be prorated and all would be back on the same basis.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). While the deposit made by Mrs. Sawyer may not come within the literal meaning of the term "special deposit," it does, in our judgment, constitute a deposit for a special purpose and is frequently referred to or known as a "special

·deposit." This particular class of deposits is referred to by the author on Banks and Banking in Corpus Juris. "as a distinct class." It is stated on page 632, vol. 6, ·C. J., that:

"In using deposits made for the purpose of having ·them apply to a particular purpose, the bank acts as an agent of the depositor, and if it should fail to apply it at all, or should misapply it, it can be recovered as .a trust deposit."

In the case at bar, the evidence shows that the· depositor absolutely refused to permit the proceeds of the check in question to be deposited either to her checking ·account or her savings account. It was explained to the official ·of the bank receiving the check that the ·proceeds were intended to pay and must pay the· contractor who was repairing the damage to the house which this very check was designed to cover and satisfy. Miss Sawyer testifies that, if she had known the bank ·was insolvent, she would not have placed the money in the bank at all. The fair inference from· all her testimony is that she would not have deposited the funds at all, if she had known that they would not safely reach ·the contractor. She regarded the funds as equitably the ·money of the contractor, and the sole ·purpose of depositing the check was to have the same forwarded for collection and the proceeds safely remitted and safely ·kept for Mr. McClutchie. · The bank had notice that Mr. McClutchie had an interest in the funds and, with full ·knowledge of the facts, accepted the money as a deposit for a special purpose. Under such circumstances, good ·faith on the part of the bank required it safely to keep the funds to be applied as directed. Under such circum-·stances, the bank, we think, did not take title to the ·proceeds of the draft, and it was never intended by the ·parties that the fund should be commingled with the :general assets of the bank. It· is contended by counsel for appellee that the proof does not show the bank was ·to deliver the proceeds to the contractor, but, on the con-

trary, that Miss Sawyer was to return and execute a check to the contractor after his contract was completed. This, we think, is not a controlling factor in the case. The contractor could not be paid, of course, until his work had been done according to the contract, and it was a mere detail as to whether the bank would directly turn the funds over to McClutchie or whether Miss Sawyer would return and herself draw a check in his favor. The essential feature of this agreement was that the money belonged to the contractor the moment his contract was completed. The draft from the insurance company was upon a foreign bank and would in any event have to be forwarded for collection. This was not a deposit for collection in the usual sense of that term. There would have been no deposit for collection without the special agreement mentioned. The money at all times was charged with the trust in favor of the contractor, and at no time could the bank have charged the proceeds against any indebtedness due by Mrs. Sawyer to the bank. The principle here announced was one of the principles contended for and fully recognized by our court in *Armour Co.* v. *National Bank,* 69 Miss. 700, 11 So. 28. It is said by Mr. Michie, in his work on Banks & Banking (volume 2, p. 1291):

"A special deposit exists when money or property is given to a bank for some specific and particular purpose, as a note for collection, money to pay a particular note, or property for some specific purpose. . . . A deposit of the purchase price of property to be paid to the vendor upon the compliance with certain conditions is special"—citing in the footnotes cases in point, among which we regard *Kimmel* v. *Dickson,* 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. Rep. 869, and *Shopert* v. *Indiana National Bank,* 41 Ind. App. 474, 83 N. E. 515, as embodying the same principle here contended for.

A case very similar to the instant case is that of *Carlson* v. *Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N.

S.) 317. In that case money was directed to a bank by an administrator and attorney in fact for certain heirs; the funds to be held until receipts could be secured from the heirs, when it was to be forwarded to the holder by bank draft. The court held this to be a special deposit and entitled to a preference, although the bank commingled the money with its general funds. The court, by GOSE J., among other things, says:

"When a bank accepts a special deposit, it becomes a trustee of the depositor, and holds the money subject to the trust. The receipt itself affords strong, if not conclusive evidence of a special deposit. It shows that the money was placed in the bank for a special purpose. Fortified by the evidence of the depositor and the admitted circumstances here present, it is obvious that both parties to the transaction intended to make a special, and not a general deposit. It follows therefore that the bank holds the money, not as a general debtor, but in a fiduciary capacity"—citing many authorities.

The court also responded to the suggetion that the identical money was not traced into the hands of the receiver:

"That is true, but the old rule requiring an identification of the specific fund or its avails in the hands of a receiver has been relaxed in the later cases. The doctrine of the modern authorities, and what we consider the sounder view, is that the trust fund is recoverable where an equal amount in cash remained continuously in the bank until its suspension, and passed to the receiver"—citing also on this point several cases, including the very strong case of *Fogg* v. *Tyler,* 109 Me. 109, 82 Atl. 1008, 39 L. R. A. (N. S.) 847, Ann. Cas. 1913E, 41.

In *Peak* v. *Elliott,* 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90, the bank received money from the maker of a note with instructions to pay the sum to the holder of the note and return the canceled note, but the bank appropriated the money and failed to execute the directions of the depositor. The court expressly held that:

The money "was not deposited to be checked out or to be loaned, or otherwise used by the bank; in law the bank held it as a trust fund, and not as the assets of the bank."

And again:

"Wherever a fiduciary relationship exists, and money coming from the trust lies in the hands of the person standing in that relationship, it can be followed by the principal and separated from any money of the wrong-doer."

A strong case and one squarely in point is that of *Smith* v. *Sanborn State Bank,* 147 Iowa, 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336. It expressly answers the contention here made that the bank was not authorized to deliver the funds to the contractor, but that Mrs. Sawyer was to draw a check and herself attend to the payment. In the Smith Case, the bank accepted a deposit of money which the depositor needed for a special purpose, and that purpose was to pay certain debts specifically named, and then the remainder to be repaid to the plaintiff for the specific purpose of enabling him to take his sick wife to a hospital for treatment. The bank attempted to appropriate a portion of the funds to satisfy an indebtedness claimed by the bank against the depositor. The court says:

"The evidence shows without dispute that the check for $200. was placed with the defendant upon the express agreement and understanding that, after paying certain specifically named debts, the remainder would be repaid to the plaintiff on the following day, or whenever called for to enable him to take his wife to the hospital for needed treatment. Upon money so received, no lien attached in favor of the bank, and its attempt to appropriate the same was wholly without right or authority. Upon such a record plaintiff was clearly entitled to recover."

In the case of *Dolph* v. *Cross*, 153 Iowa, 289, 133 N. W. 669, a depositor made a deposit for the special purpose of meeting checks which he had already issued.

The special conditions were explained to the bank at the time the deposit was made. The court held that this special arrangement did not create the relation of debtor and creditor, but "that the right of the check holders, for whose benefit it was deposited, was superior to that of the garnishing creditor." See also, *Hutchinson* v. *National Bank of Commerce*, 145 Ala. 196, 41 So. 143; *Montagu* v. *Pacific Bank* (C. C.), 81 Fed. 602; *Covey* v. *Cannon*, 104 Ark. 550, 149 S. W. 514; *Fort* v. *First National Bank of Batesburg*, 82 S. C. 427, 64 S. E. 405; *Lynam* v. *Belfast National Bank*, 98 Me. 448, 57 Atl. 799; *Wagner* v. *Citizens' National Bank & T. Co.*, 122 Tenn. 164, 122 S. W. 245, 28 L. R. A. (N. S.) 484, 135 Am. St. Rep. 869, 19 Ann. Cas. 483; *McBride* v. *American Ry. & Lighting Co.*, 60 Tex. Civ. App. 226, 127 S. W. 229.

We are of the opinion that appellant's claim should be treated as a trust fund, and that she should have been awarded a preference. The question here presented will not be so important to depositors secured under the new bank guaranty act.

*Reversed and Remanded.*