JOURDAN *v.* BENNETT, ET AL.

[81 South. 239, Division A, No. 20643.]

1. BANKS AND BANKING. *Issuance of cashier's checks. Effect.*
   Where a general depositor of a bank obtained cashier's checks from the bank to the amount of his deposits in the bank, this did not change the relation of debtor and creditor and make the transaction a special deposit.

2. ASSIGNMENT. *Bill of exchange. Effect of.*
   Where a bank gave a depositor bills of exchange on a bank in
   another city not drawn on any particular fund in the hands,
   of the drawee, bank, but drawn generally on such bank such
   transaction constituted no legal or equitable assignment of
   this fund to the depositor.

3, BANKS AND BANKING. *Special deposits. Title to.*
   In the case of special deposit, the title to the property never
   changes; the depositor is a bailor and not a creditor of the
   bank.

4. BANKS AND BANKING. *Receivership. Preference claim. County funds.*
   Under Code 1906, section 3485 (Hemingway's Code, section 2823)
   a county claim for deposits in a bank at the time of the bank's
   failure is superior to that of a depositor to whom the bank had
   issued bills of exchange on a bank in another city. In such case
   the depositor had no preference claim.

APPEAL from the chancery court of Tishomingo county.

HON. A. J. McINTYRE, Chancellor.

Suit by G. T. Jordan against W. T. Bennett receiver and others. From the decree rendered, both sides appeal.

The facts are fully stated in the opinion of the court.

*Cunningham & Cunningham,* for appellant.

*W. L. Elledge* and *W. J. Lamb,* for appellee.

SYKES, J., delivered the opinion of the court.

The appellant, complainant in the court below, filed a petition in the chancery court praying that court to decree that he held a preference claim against the receiver of the Tishomingo Banking Company for three thousand, seven hundred dollars, and that the receiver pay him this amount out of funds in his hands. Complainant claimed that by reason of the facts herein below stated he made a special deposit in this bank of

this amount. Tishomingo county had on deposit in this bank at the time of its failure thirty-five thousand, seven hundred dollars. The county made its claim for this amount as a preference claim and a trust fund binding upon the entire assets of the bank and being a prior lien upon these assets. From the record, the amount of the assets of the bank appears not to have been sufficient to satisfy in full the claim of the county. The real contest in the case is whether the claim of the county should be paid before that of complainant. The county's claim is based on section 3485, Code of 1906, section 2823, Hemingway's Code. The learned chancellor held that complainant made a special deposit of three thousand, seven hundred dollars in the bank and has a preference claim for this amount. He further held that the preference claim of the county was superior to that of complainant, and ordered the receiver to pay the county's claim, but denied the petition of complainant. The complainant appeals from this decree, and the receiver prosecutes a cross-appeal. Cross-appellant contends that the learned chancellor erred in holding that appellant had made a special deposit in the bank and held a preference claim for that amount. The receiver contends: First, that this question is *res adjudicata;* that it was decided adversely to the contention of the appellant in the Missouri courts in a contest in those courts for the fund now in controversy. Second, that the facts in the case show that there was no special deposit of this money in the Iuka Bank, and consequently this is no preference claim.

The claim of the appellant is based upon the following facts: He was a general depositor in the defunct bank and prior to December 19, 1911, he had a credit in said bank of over two thousand, five hundred dollars. About this time he decided to go to St. Louis to purchase live stock, and went to the bank and drew a check for two thousand, five hundred dollars, intending to carry this amount of money with him to St. Louis. He and the

president of the bank discussed the advisability of carrying this amount with him, and this official advised him not to do so, but assured him that he (the bank president) could put this sum in the National Bank of Commerce in an easier and more expeditious way. This was finally agreed to between the parties, and complainant was given cashier's checks for two thousand, five hundred dollars. A few days thereafter complainant was advised that when he got to St. Louis he would have to pay exchange for having these cashier's checks cashed and sent his son to see the president of the defunct bank, and on December 19, 1911, these cashier's checks were surrendered to the bank and a bill of exchange for one thousand, two hundred dollars issued by the Iuka Bank in favor of complainant and his account was credited with one thousand, three hundred dollars. The National Bank of Commerce of St. Louis was one of the correspondent banks of the defunct Iuka Bank. Some days after this, the Iuka Bank increased its deposit in the correspondent St. Louis bank about four thousand dollars. On January 6, 1912, the complainant returned to the Iuka Bank and obtained another bill of exchange on the same St. Louis bank for two thousand, five hundred dollars. A few days thereafter, complainant abandoned the idea of going to St. Louis and assigned the two bills of exchange on the St. Louis bank to the First National Bank of Corinth. About this time, namely, on January 12th, the Iuka Bank was placed in the hands of a receiver. At this time the Iuka Bank had on deposit in the St. Louis bank something over four thousand, six hundred dollars. The First National Bank of Corinth instituted suit in St. Louis to recover the amount of these two bills of exchange, claiming in effect that there was an equitable assignment of this money by the Iuka Bank to Jourdan. Jourdan paid all the expenses of this litigation nominally conducted by the Corinth bank. The St. Louis courts very properly held that there was no legal or equitable

assignment of this money to Jourdan and decided that the receiver was entitled to it. This decision of the St. Louis lower court was affirmed by the court of appeals. After this adverse decision, Jourdan propounded his claim in this proceeding. It is unnecessary for us to decide whether or not the decision of the Missouri court is *res adjudicata* of this question, for the reason that we do not think appellant made a special deposit of this three thousand, seven hundred dollars in the Iuka Bank, and therefore has no preference claim, but is merely a general creditor of the defunct bank.

The strongest inference favorable to the appellant from the record is that he was a general depositor in the Iuka Bank; that he wanted to go to St. Louis to buy live stock, and at first intended to take the money with him; that, in conference with the president of the bank, he was dissuaded from doing so because he was assured that the bank could arrange for him to get this amount of money in St. Louis without having to pay any exchange for it. It was not the intention of either the appellant or the bank that any particular two thousand, five hundred dollars should be set apart for appellant and sent to the St. Louis bank to be delivered to him. The transaction was merely one whereby appellant wanted to get a credit in St. Louis of two thousand, five hundred dollars. The bank first issued to him cashier's checks for two thousand, five hundred dollars. This did not change in any respect the relationship of debtor and creditor. Not being satisfied with this arrangement, the appellant, expressly desiring to avoid paying exchange, then accepted from the president of the bank first a bill of exchange for one thousand, two hundred dollars, and a few days thereafter another for two thousand, five hundred dollars. These exchanges were not drawn on any particular fund in the hands of the St. Louis bank, but were generally drawn on this bank. This transaction constituted no legal or equitable assignment of this fund

to appellant. *Bush, Redwood & Co.* v. *Foote et al.,* 58 Miss. 5, 38 Am. Rep. 310.

Counsel for appellant contend that the above facts constituted this a special deposit under the authority of *Sawyers* v. *Conner,* 114 Miss. 363, 75 So. 131, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388. The court in the Conner Case, however, held that the bank did not take title to the proceeds of the draft and that it was never intended by the bank or the depositor that the fund should be commingled with the general assets of the bank. In this case, however, the entire transaction shows that no special fund was set apart for the appellant to be sent to St.Louis and there delivered to him, but that the relation of debtor and creditor existed, and that appellant accepted from his debter two bills of exchange for which he gave the bank his check. In the case of a special deposit, the title to the property never changes; the depositor is a bailor and not a creditor of the bank, 7 C. J. p. 630; 3 R. C. L. p. 522, section 150. In the case of *Mississippi Central Railroad Co.* v. *Conner,* 114 Miss. 63, 75 So. 57, this court said that: "The distinctive feature, the *sine qua non,* of a special deposit, is that the identical money deposited is to be kept apart from the general funds of the bank, to be returned to the depositor or paid to some other person, designated when the money is deposited."

The contention of the appellant that the transactions between him and the bank resulted in a trust in his favor is adjudicated adversely to him in the case of *Banking Co.* v. *Paine,* 67 Miss. 678, 7 So. 462. That case is similar in its legal aspects to the case at bar. The case of *Billingsley* v. *Pollock, Receiver,* 69 Miss. 759, 13 So. 828, 30 Am. Rep. 585, is also directly in point.

The chancellor was correct in holding that the county's claim was superior to that of appellant, but erred in holding that appellant had a preference claim. Appellant only occupies the position of a general creditor of the bank.

Affirmed on direct appeal, and reversed on cross-appeal. Decree will be entered here in accordance with this opinion.

*Affirmed.*
*Reversed.*