LOVE, SUPERINTENDENT OF BANKS, *v.* D. A. MCINTOSH *et al.*

(Division B.   Nov. 23, 1931.)

[137 So. 791.   No. 29605.]

**F. W. Bradshaw** and **Flowers, Brown & Hester**, all of Jackson, for appellant.

W. U. Corley, of Collins, for appellees.

674

Argued orally by **Clyde Hester,** for appellant, and by **W. U. Corley,** for appellees.

Griffith, J., delivered the opinion of the court.

Appellees exhibited their petition in the chancery court in the matter of the liquidation of the Bank of Collins, the stating part and the prayer of said petition being as follows:

"That in the town of Collins, there exists and is maintained the Collins Methodist Church, of the Methodist Episcopal Church South, and that its finances are managed and maintained by and under the direction of its Board of Stewards, and that your petitioners are the regularly appointed officials in that capacity.

"That Mrs. W. U. Corley is and was during the year 1930 the regular authorized collector for said board, authorized and directed to collect funds from the membership of said church funds for the payment of the Pastor's salary, General Conference Collections and Special Endowment Funds, in which capacity she worked for the year 1930 and prior thereto, all for the use and benefit of said board and for the purposes aforesaid.

"That it was her authorized custom to make all such collections as could be made and to deposit same to her credit in the Bank of Collins, Mississippi, and that in pursuance to such authority, arranged with said bank for an account in her name, to which credit should be given for all church funds so collected to her and in her name and for the use and benefit of said church; that with said understanding and agreement, and with full knowledge of said bank and its authorized agents, officers and servants that it was church funds, on or about the 1st day of November, 1930, deposited in accordance with said agreement the sum of two hundred seventy-two dollars and ninety cents, which said sum was received and accepted by said bank, as it had done for many months prior thereto and as it had been doing for all the year 1930 and a good portion of the year 1929, all

with full knowledge of said bank of the ownership of such funds so deposited.

"That on or about the 11th day of November, 1930, in accordance with her authority issued checks for the sum of two hundred seventy dollars, to the parties to whom it belonged in said church, but before same could be presented for payment, the said Bank of Collins, a duly chartered Banking Institution closed its doors, and was declared insolvent and placed in the hands of a liquidator, or the State Superintendent of Banks for liquidation, who now refuses to pay over said sum to these your petitioners, or the payees in said checks.

"Petitioners charge that said money was and is a trust fund, and so known to the bank when received, and at no time did it ever become the property of the bank, or the state of creditor and debtor exist, but that these your petitioners are entitled to have said sum paid in full as a trust fund for church purposes and for which purpose it was deposited and received as a deposit.

"Wherefore the premises considered, petitioners pray that said liquidators be cited to appear before this court and show cause, why this court should not enter a decree ordering the payment of said sum to your petitioners and at the final hearing they pray for a decree ordering the Superintendent of State Banks to issue or cause to be issued full payment to these petitioners the full sum of two hundred seventy-two dollars and ninety cents for church purpose and as a trust fund, and as in duty bound will ever pray, etc."

It will be observed that the petition would seem to proceed upon the theory that the deposit in question was a trust fund, and that the said deposit could be followed into the funds remaining in the hands of the bank, and thus recovered in full. Upon the argument, however, the position the more strongly urged by appellees is that the deposit was a special deposit, and reliance is had upon

the case of Sawyers v. Conner, 114 Miss. 363, 75 So. 131, 132, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388.

In the Sawyers v. Conner Case, the dominant facts are stressed by the court, that the depositor absolutely refused to permit the proceeds of the draft in question to be deposited either to her checking account or to her savings account, but to the contrary the written receipt given by the bank expressly stated that the deposit was a special deposit, and the testimony showed that the bank then and there well and definitely understood that the funds derived from the collection of the draft so deposited should and must, upon the collection of the deposited draft, be paid over to the particular party then and there named for whose express benefit the special deposit was made. The court said: "Under such circumstances, the bank, we think, did not take title to the proceeds of the draft, and it was never intended by the parties that the fund should be commingled with the general assets of the bank." There are some citations of cases and quotations from cases made in the opinion in Sawyers v. Conner, which, if disconnected from the actual facts of the case, are calculated to mislead and evidently did mislead the learned chancellor in this case. If, however, he had turned to Railroad Co. v. Conner, 114 Miss. 63, 71, 75 So. 57, 58, decided by the same court at the same term, in which it is said that "the distinctive feature, the sine qua non, of a special deposit is that the identical money deposited is to be kept apart from the general funds of the bank, to be returned to the depositor or paid to some other person, designated when the money is deposited," there he would have found the languge that comes the nearer to the point here in hand; although we do not say that the sine qua non of a special deposit is, under all facts, to be restricted so narrowly as the last quotation would require. We do say, however, that any extension of the rule beyond that stated in said last quotation must be carefully guarded,

and allowed only with the greatest caution in the matter of insolvent banks.

The case in hand does not show that in fact the deposit made was receipted for or otherwise acknowledged as a special deposit, and does not show that the money was to be paid to some particular person expressly named or designated when the money was deposited. The case therefore fails to come within Sawyers v. Conner. The petition shows that the funds were deposited to a checking account, and, there being no allegation to the contrary, the presumption is that, as usual with checking accounts, the checks were to be honored by the bank in favor of whomsoever the checks were drawn, the payees of those checks to be at the determination of the depositor. It is not enough that the bank knew that the funds so deposited were placed there as church funds and that the legitimate beneficiaries of the checks when drawn would be those to whom the church would be due remittances out of that fund; or to state it otherwise, that the funds were trust funds; for trust deposits are entitled to preferences over other depositors in the liquidation of insolvent banks only when made so by statute, and there is no statute so providing as to church funds. If the contention of appellee could prevail here, then the beneficiaries of every agent or trustee or other fiduciary who deposits trust funds would be entitled to a preference upon the insolvency of the bank, and such, of course, is not the rule. And it must be kept in mind that we are not here discussing the case of a bank still solvent and going, where funds known to it to be trust funds, were with the knowledge of the bank diverted to objects other than those within the trust.

But appellee argues finally that, since the funds here deposited belonged to the church, the agent of the church, in making the deposit, although authorized to make the deposit in her own name, could not thereby pass title to the bank in such a manner as to create the relation

of debtor and creditor; that no person can confer up- on another a better title than that held by the conferrer. The petition expressly declares that the agent in this case had been making these deposits in her own name for a long time, and, as stated, the petition expressly avers that she was authorized so to do, or to use the words of the petition, "it was her authorized custom." Such an authority and practice carries with it the usual incidents appertaining thereto, among which, in making such a deposit, is that the usual relation between bank and depositor should come into effect, in the absence of an express and definite agreement to the contrary.

Reversed and remanded.