JOHN DERN ET AL. V. WILLIAM H. KELLOGG ET AL.

FILED APRIL 8, 1898. No. 7948.

1. **Violation of Erroneous Instruction:** REVIEW. A verdict rendered in plain disregard of instructions is contrary to law; but the judgment will not for that reason be reversed when the instructions were erroneous and the verdict the only one which could properly be returned under the evidence.

2. **Liability of Bank for Failure to Collect Draft.** A merchant at H., in this state, being indebted to K. & Co., in Chicago, the latter made a draft upon him and sent it to a bank at H. without other instructions than to collect and remit. The bank received the draft February 19, presented it and obtained an oral acceptance and a promise that it would be paid in a few days. At maturity the merchant requested the bank to hold it and repeated his promise to pay in a few days. The same thing occurred later. The bank held the draft without communicating with the drawers until March 5, when at the merchant's request it wrote the drawers asking an extension of thirty days. March 7, and before an answer was received, it took a conveyance of all of the merchant's property in

satisfaction of a debt to itself and with an agreement to pay debts to strangers to a large amount, but not including that to K. & Co. It then returned the drafts, which could not be collected. *Held*, That it had not performed its duties in good faith and was liable to K. & Co.

3. ——: CUSTOM AND USAGE. A custom of banks at H., unknown to K. & Co., to so treat collections was no protection. A custom to be availed of must be lawful and reasonable.

4. ——: EVIDENCE. In such a case it is not necessary for the plaintiff to prove with certainty that but for the misconduct of the collecting agent payment would have been obtained. A *prima facie* case is established by showing that such, with reasonable probability, would have been the result.

5. ——: ——. The fact that all the time the bank held the draft the merchant continued to conduct his business and had property subject to execution to the value of many times the debt is sufficient to charge the bank, *prima facie*, with the amount of the draft.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Affirmed.*

*E. F. Gray* and *D. B. Carey*, for plaintiffs in error:

Under the evidence the bank is not liable. (*Freeman v. Citizens Nat. Bank*, 42 N. W. Rep. [Ia.] 632; 1 Daniel, Negotiable Instruments secs. 496, 497; 2 Randolph, Commercial Paper secs. 603, 604; *Farmers Bank & Trust Co. v. Newland*, 31 S. W. Rep. [Ky.] 38; *Sahlien v. Bank of Lonoke*, 16 S. W. Rep. [Tenn.] 373; *Crouse v. First Nat. Bank*, 33 N. E. Rep. [N. Y.] 301; *Bank of Washington v. Triplett*, 1 Pet. [U. S.] 25.)

*Rich & Sears*, contra.

IRVINE, C.

The defendants in error were partners doing business in Chicago under the name of Charles P. Kellogg & Co. The plaintiffs in error were partners doing business as bankers in Hooper, in this state, under the name of the State Bank of Hooper, and will hereafter be called the bank. H. H. Looschen was a merchant in Hooper, who

40

in February, 1891, was indebted to Kellogg & Co. in the sum of $704.50. February 17, 1891, Kellogg & Co. drew two drafts to their own order on Looschen, one for $352, payable three days after sight, the other for $352.50, payable ten days after sight, and after indorsing them to the bank, transmitted them to the bank with instructions to collect and remit. This action was brought by Kellogg & Co. against the bank to recover the amount of the drafts, and is based on the alleged negligence of the bank, preventing their collection. Plaintiffs recovered judgment for the amount of one of the drafts, and the bank brings the case here for review.

The drafts were received by the bank February 19, and were that day presented and by Looschen orally accepted, he promising to call and pay them in a few days. When the first draft matured Looschen called at the bank and asked that it be held, promising again to pay in a few days. When the second draft matured the same thing occurred. The bank held the drafts, without notifying plaintiffs, until March 5, when Looschen again called and requested the bank to write the plaintiffs asking an extension of thirty or sixty days. This was done. During this whole period Looschen was indebted to the bank about $12,000 on notes and about $3,000 on overdrafts. March 7 he conveyed all of his property to the bank in satisfaction of this debt, the bank also agreeing to pay certain other debts, not including that to plaintiffs, and amounting to about $5,500, according to a composition agreement Looschen had made with such other creditors, at the rate of 75 cents on the dollar. The same day the bank returned the drafts to plaintiffs, together with the letter with which they had been transmitted, indorsing across the letter, "Mr. Looschen has sold out his business." After the conveyance to the bank it was impossible for the plaintiffs to collect anything. In addition to the foregoing facts it should be stated that there was evidence tending to show that in this method of handling the drafts the bank followed a custom in vogue

by it and the only other bank at Hooper. There was nothing to show that the plaintiffs knew of this custom. Further, the evidence tends to show that prior to March 7 the bank considered Looschen solvent, and the conveyance seems to have been made at the suggestion of Looschen and not upon any pressure brought by the bank.

The court instructed the jury that the drafts being only a means resorted to by plaintiffs to collect the debt, and there being no other parties in interest, the bank was not required to observe the demands of the law merchant with regard to presentment and notice of dishonor of commercial paper, but that it was merely a collecting agent and bound only to reasonable diligence. So far the charge was undoubtedly correct. But the court also charged that if the bank pursued the custom prevailing at all the banks in Hooper, it was not liable, although the plaintiffs were ignorant of that custom. In other instructions the facts were rehearsed substantially as they have been stated here, and the jury was told that if the facts were so found there could be no recovery. Also the jury was charged that if it found for the plaintiffs it must find for the amount of both drafts. All these instructions were evidently disregarded by the jury. Those relating to the right to recover were palpably erroneous. A verdict rendered in plain disregard of the instructions is contrary to law, and will ordinarily be set aside, whether the instructions be good or bad. (*Aultman v. Reams*, 9 Neb. 487; *Omaha & R. V. R. Co. v. Hall*, 33 Neb. 229; *Standiford r. Green*, 54 Neb. 10.)

In this case, however, there should not be a reversal, because the error was in no sense prejudicial to the plaintiffs in error. The only verdict which could properly have been rendered under the evidence was one in favor of the plaintiffs below. It would be a disgrace to the law if the plaintiffs could not recover on the admitted facts of the case. True, the holding of the drafts for a reasonable time, at the request of the acceptor, might often not be negligent, and might even be the part of prudence; and

we by no means intend to hold that a bank holding paper for collection merely, may not, as a general rule, obtain a preference for a debt owing to itself. Neither the holding of the drafts nor the securing of a preference for its claim would necessarily charge the bank with liability. But the combination of the two facts, under the circumstances here proved, leaves but one inference to be drawn, and it is an act of charity to call that inference one of negligence. A harsher term might be more appropriate. Looschen was in the possession of property of great value, his own and subject to execution. He was conducting a mercantile business. He owed the bank more than $15,000. The bank held the drafts from February 19 until March 7, relying solely on an indefinite promise by Looschen to "come in and pay in a few days." The bank did not communicate with the plaintiffs in any way until March 5, and then only to ask a considerable extension. March 7, and before an answer was or could be received, it appropriated the whole of Looschen's property to itself, not only in satisfaction of its own debt, but assuming at the same time the payment of a large amount of other indebtedness, in favor of men to whom it owed no duty, and in disregard of the plaintiffs, to whom it was bound for the exercise of good faith and reasonable diligence in their protection. Having taken the property and so made it impossible to collect the drafts, it returned them, coolly stating that Looschen had sold out his business, but not even then disclosing its own interest or share in the transaction.

The cases cited by the defendants in support of the bank's conduct are not in point, and if they were we could not regard them as precedents worthy to be followed. Courts are not organized to lend their sanction to such transactions. The bank's conduct was not merely negligent. It was characterized by the utmost bad faith. *Freeman v. Citizens Nat. Bank*, 42 N. W. Rep. [Ia.] 632, was a case where drafts had been frequently drawn. It seems that some had been returned, and the drawers in-

structed the bank, "Do not return any more drafts.   *   *
Wire us and await reply." The bank promptly wired
the drawers of the dishonor of the drafts in question.
The drawers answered by mail. In the meantime the
bank had received information which led it to issue an
attachment for a debt owing to itself. It at once wired
that fact to the drawers, and on instructions to that effect
handed the drafts to its attorney. Other attachments
had been levied which absorbed the assets. Here the
bank strictly followed special instructions, and informed
the drawers promptly of the facts. It was of course held
not liable. Most of the cases cited are adduced in support
of the proposition that plaintiffs were bound by the cus-
tom of the Hooper banks in such matters, although not
aware of such custom. This upon the theory that, the
collection having been sent without special instructions,
the customer is presumed to have intended that the bank
should pursue its usual course. Such cases are *Farmers
Bank & Trust Co. v. Newland*, 31 S. W. Rep. [Ky.] 38;
*Sahlien v. Bank of Lonoke*, 16 S. W. Rep. [Tenn.] 373. But
all such cases state or clearly imply that the custom must
be both lawful and reasonable. In *Crouse v. First Nat.
Bank*, 33 N. E. Rep. [N. Y.] 301, the customer had been
promptly informed of the bank's acts and had ratified
them. In sending the collection plaintiffs did not assent
by implication to a custom that the bank should be negli-
gent or that it should practice a fraud upon them. A case
much like this, but where the conduct of the bank had
been by no means so reprehensible, is *Mound City Paint &
Color Co. v. Commercial Nat. Bank*, 9 Pac. Rep. [Utah] 709.

It is claimed that there was no proof of damages; that
is, that it was not shown that had the bank been diligent
the drafts could have been collected. In such cases it is
usually impossible to show with certainty that if due care
had been observed the collection would have been made.
The law is not so rigid in its requirements for the pro-
tection of the negligent agent. It is only necessary to
show a reasonable probability that with due care the col-

lection would have resulted. The burden then rests on the defendant to show that there was no damage. (*Fahy v. Fargo*, 17 N. Y. Supp. 344. See, too, *First Nat. Bank of Meadville v. Fourth Nat. Bank of City of N. Y.*, 77 N. Y. 320; 89 N. Y. 412; *Trinidad Nat. Bank v. Denver Nat. Bank*, 4 Dill. [U. S.] 290.) In this case it was shown that until March 7 Looschen continued to conduct his business and owned property subject to execution to the value of $15,-000 at a conservative estimate. The bank saw fit to take it that day to satisfy a debt of over $15,000 and agreed at the same time to pay therefor several thousand dollars more. Looschen had been permitted to overdraw his account about $3,000, and the cashier testifies that any checks that he might have drawn before March 7 would have been paid. Certainly it would appear from these facts that had the bank been diligent in seeking payment of the drafts, or in returning them, or in notifying the plaintiffs of the facts, it is reasonably probable that payment would have been obtained. It is suggested that there was no ground of attachment and that the plaintiffs could not have otherwise proceeded with sufficient celerity to realize their debt. But if Looschen were honestly disposed it is clear that he could have paid. If he were otherwise disposed and had undertaken to evade plaintiffs, a cause of attachment would have arisen and the process would have been clearly effectual. The only vice in the verdict is that it was not for the amount of both drafts, and defendants cannot complain of that.

AFFIRMED.