MABRY *et al. v.* WALLER.

(Division A. March 8, 1937.)

[172 So. 870. No. 32527.]

Rush **H. Knox** and Creekmore, **Creekmore & Capers,** all of Jackson, and **E. C. Sharp,** of Booneville, for appellants.

**Stone & Stone,** of Coffeeville, for appellee.

Argued orally by **Wade H. Creekmore** and **H. H. Creekmore,** for appellant, and by **W. I. Stone,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Prior to February 1, 1930, the Bank of Derma had been in existence and had failed. Mrs. C. S. Waller, as guardian of her minor children, had approximately $6,000 on deposit in that bank. A few days prior to the transaction here involved, the Bank of Derma was reorganized and chartered as the Bank of Derma. On February 1, 1930, Mrs. Waller desired to withdraw her money from the new bank. She and her attorney met and had a conference with C. G. Mabry and five others, composing the entire board of directors of the new bank. As a result of this conference the six directors executed their promissory note in favor of Mrs. Waller, as guardian, for the amount she had on deposit in the bank; the note was due one year after date and bore 6 per cent.

interest. As a result of this conference and the execution of this note, Mrs. Waller, according to the evidence of one of the directors, "swapped" her deposit in the bank for the individual note of the six directors. In the presence of Mrs. Waller these six directors agreed among themselves that they would have the bank issue to C. G. Mabry and his brother a time certificate of deposit for the general deposit of Mrs. Waller, bearing 4 per cent. interest and due one year after date. Mabry and his brother were to hold this time certificate of deposit for all the directors signing the note, and the deposit in the bank was to be applied only to the payment of the note when it became due. Mrs. Waller and her attorney heard this agreement made between the directors but did not participate therein, nor was the agreement for her benefit.

The directors repeated the agreement to Stewart, the cashier of the bank, who issued to C. G. Mabry and his brother a time certificate of deposit for the amount, without any special notation, or anything, thereon to indicate that the general deposit had been changed into a special deposit or trust fund. No entry was ever made upon the books of the bank indicating that there was any agreement that this fund should be a special deposit or trust fund.

Subsequently, in December, 1930, the new bank closed its doors and went into the hands of Love, Superintendent of Banks, who continued to administer the affairs of the bank until May 19, 1934, when, in pursuance of chapter 146, Laws 1934, a liquidating corporation was formed by decree of the chancery court. The stockholders of the corporation took over the affairs, control, and management of the assets and liabilities of the defunct bank. When the note became due, which was after the new bank had closed its doors, the six directors renewed it, signed as before, and due one year from that date. Neither Mrs. Waller nor the six directors ever presented

to the chancery court, prior to the time the affairs of the bank were taken over by the liquidating corporation, any claim for preference.

Some time after the liquidating corporation had taken over the affairs of the defunct bank, Mrs. Waller brought an action at law against the six directors for the recovery of the amount of the note, with interest. The directors appeared in the circuit court, and upon their motion the cause was transferred to the chancery court, where Mrs. Waller reframed her cause of action, and stated in her bill substantially the above facts, making J. S. Love, Superintendent of Banks, a party thereto. The directors of the bank appeared and filed their answer, admitting their liability on the note and setting up as against the liquidating corporation their claim to a preference for the amount of the deposit of Mrs. Waller, transferred to Mabry and brother as a special deposit or a trust fund for the payment of the note, and prayed for a decree against the liquidating corporation for the amount of the deposit as a trust fund.

The liquidating corporation denied any liability because no trust had ever been created; denied the authority of the directors to so create a trust fund; denied that the liquidating corporation was a proper party to the cross-bill of the directors; and denied that they could maintain any action against it for the further reason that the claim had never been established in the chancery court at the time and in the manner provided for the administration of liquidating banks. There was evidence that at the time the bank closed it had on hand in cash and to its credit with other banks more than the amount of the deposit or note.

The court below entered a decree against the directors for the principal amount of the note and interest, and dismissed their cross-bill against the liquidating corporation. Mabry and others, as individuals, prosecute this appeal.

It is the contention of the appellant that the facts which we have detailed established that the deposit was a special deposit or trust fund for the payment of their note to Mrs. Waller, as guardian, and that the court below erred in not so holding. Let us emphasize the fact that the time certificate of deposit issued to C. G. Mabry and his brother contained no information that it was anything more than a general deposit; there was no indication of any special deposit or of any kind of trust, and the books of the bank and minutes of the board of directors showed no action by the bank tending to establish a trust or special deposit of the funds here involved. The appellants rely strongly upon the case of Sawyers v. Conner, 114 Miss. 363, 75 So. 131, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388, while the appellee relies upon the case of Mississippi Cent. R. R. Co. v. Conner, 114 Miss. 63, 75 So. 57.

In the case of Love v. Little, 167 Miss. 105, 148 So. 646, this court held that a deposit is presumed to be general unless expressly made special and specific. From the moment the agreement was made by the directors inter sese and with Stewart, the cashier, no step was taken by them as directors of the bank or by the cashier tending to withdraw this general deposit of Mrs. Waller from the general funds of the bank, the status the deposit had occupied prior to the execution of this note. Nothing was done by these directors from the moment they received the time certificate of deposit, which was in form and in fact a general deposit, unless that status was changed by the particular agreement which the directors had among themselves. The chief executive officer of the bank, the president thereof, took no part in these proceedings. The directors were the managing officers of the bank; they made no entry upon their minutes withdrawing and segregating this fund from the general deposits of the bank.

From the date of the execution of the note by these six directors and the issuance of the time certificate of deposit on February 1, 1930, to the time the bank closed, they, as active directors of the bank, allowed this deposit to remain on the books as a general deposit in the same category and with the same standing, so far as the books, minutes, and records of the bank disclosed, as any other general deposit. They were presumably familiar with the affairs and condition of the bank; they had controlling access to the records of the bank; they accepted a certificate of deposit which bore no evidence of the creation of a special deposit or trust fund. By their action they never established any trust in this fund. They either knew or should have known, the manner in which this particular deposit was entered on the books of the bank; they acquiesced directly as directors in the manner in which the books under their control were kept. They were charged with notice that they had not accomplished on the books of the bank the segregation of this deposit as a trust fund or special deposit. For nine or ten months they allowed it to remain unchanged. The facts of this case easily differentiate it from the facts disclosed in Sawyers v. Conner, supra. There the special depositor had no knowledge that the bank had not complied with its agreement in making the special deposit; she had no access to the books of the bank, nor control thereof, and the oral evidence establishing the trust in that case was supported by the entry on the deposit slip which the officer of the bank gave her at the time the deposit was made. In the case at bar nothing was entered on the time certificate to indicate a trust fund, and it was not carried on the books of the bank as a trust fund.

We are of opinion that the court below correctly held that no trust fund or special deposit was established in favor of these directors. The fact that they honestly believed they were acting in the interest of the bank

cannot avail here in their behalf. They represented themselves individually and the bank at the same time in this transaction and never accomplished the segregation of this fund in any manner. We do not mean to hold that an officer of the bank could not under any circumstances set up a trust or special deposit in a particular fund, but what we do hold is that on these facts these directors did not accomplish the result they desired.

The shift, change, or "swap" did not change the relation of debtor and creditor so far as the bank was concerned. It simply owed the same debt to different parties.

Affirmed.