**CORBETT et al. v. KLEINSMITH et al.**

No. 7948.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1940.

512

Harold M. Shapero, of Detroit, Mich. (Samuel Shapero. and Harold M. Shapero, both of Detroit, Mich., on the brief), for appellants.

Carl Runge, of Detroit, Mich. (Robert S. Marx, Carl Runge, and Lawrence I. Levi, all of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellees.

Before HICKS, ALLEN, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

Appellants brought suit against the First National ' Bank—Detroit,—in receivership since May 11, 1933,—to recover $15,066, an amount paid to Lucille Kleinsmith upon her forged endorsement of forty-six checks, drawn on the Bank by the McGiverin-Haldeman Company payable to the order of Vincent Corbett, Miss Kleinsmith's employer. Miss Kleinsmith and the McGiverin-Haldeman Company were also defendants in the suit below. There is no substantial dispute as to the facts.

Vincent Corbett was sole manager of the Ravendale Subdivision in Detroit, owned by himself and his three sisters. In August, 1923, he employed the McGiverin-Haldeman Company, a Detroit real estate agency, to sell lots and collect installment payments thereon. The agency agreed to deposit all collections in a separate bank account, render accounts and remit collections monthly. The agency's promise, however, was not known to the Bank, and no separate account was maintained. Instead, collections for appellants were deposited by the agency, with its own funds and collections for others, in a general account, from which remittances were made to appellants without objection.

Corbett had two accounts with the Bank, one in his own name, opened November 28, 1922, and the other in the name of the Ravendale Subdivision, opened April '12, 1926. He alone had authority to draw on these accounts until March 1, 1927, when he authorized Louis H. Olfs, an expert accountant who assisted him in the preparation of his income tax returns, to draw on the Ravendale account.

Corbett employed Miss Kleinsmith in May, 1923, at a monthly salary of $135. As his confidence in her increased, her duties and authority became more extensive; she not only did his routine stenographic and clerical work, but kept his books of account and other office records, and reconciled the monthly bank statements. Under his casual and intermittent supervision, she handled practically all his business affairs, and during his absence had full charge of his office. He was frequently away, at one time was absent almost a year on account of illness, and took a vacation of two or three months' duration at least once a year. Miss Kleinsmith deposited checks sent him by the McGiverin-Haldeman Company, totalling $10,000 to $15,000 monthly, received cash payments at the office from others approximating $500 monthly, and made necessary cash expenditures.

At first Corbett endorsed all checks himself, whether to be deposited or cashed, but about 1928 he provided Miss Kleinsmith with a rubber stamp bearing a restricted endorsement and authorized her to endorse checks for deposit in appellee Bank. She was never expressly authorized to endorse checks except for deposit, and had no authority to draw checks.

Corbett ordinarily transacted his business at the Bank with Ida M. Reiman, a teller in the Women's Commercial Department. She became well acquainted with him and with Miss Kleinsmith. She knew the nature of his business; she knew that he travelled extensively, necessitating absence from his office frequently and for considerable periods of time; she knew Miss Kleinsmith had full charge while he was away and was his trusted and valued employee. In fact. Corbett had often spoken

of Miss Kleinsmith to Miss Reiman, praising her highly, expressing confidence in her and stating that he was fortunate to have such a person in charge of his affairs. His praise continued and his faith was unshaken until December, 1932, when Olfs' notice of an alteration in a bank statement led to the discovery of her defalcations, totalling $46,000, only $15,066 of which is involved in this suit.

Miss Kleinsmith obtained in all forty-six checks from the McGiverin-Haldeman Company, by representing from time to time, between regular accounting dates, that the amounts requested were needed for current office expenditures. The checks were for relatively small sums and were drawn between August, 1928, and December, 1930. Making no attempt to imitate Corbett's signature, Miss Kleinsmith endorsed the checks and presented them to Miss Reiman, who cashed or initialed them, knowing Corbett had not endorsed them himself, but believing Miss Kleinsmith was acting on his behalf and that the proceeds were to be used for his benefit. If a few cases cashier's checks were obtained instead of money.

No accountant was ever employed to audit Corbett's books, but his accountant friend, Olfs, was in his office frequently. During the entire nine-year period of Miss Kleinsmith's employment, Corbett made no accounting to his sisters, nor did he attempt to determine their respective shares in the Ravendale account. During all this time, too, he continued to hold Miss Kleinsmith out to the Bank as his trusted employee in charge of his business. She was never required to give a fidelity bond. Her salary never exceeded $135 per month; yet, in 1926, she purchased a $26,000 home within two blocks of Corbett's residence, on an agreement providing for a down payment of $1,500, payments of $1,500 and $2,000 within three and five months, respectively, and $210 monthly thereafter. To meet the second payment, Miss Kleinsmith borrowed $1,500 from appellants on a note signed by herself and her mother, secured only by assignment of her purchaser's interest. Her mother was not employed, except as she did laundry work on occasion by the day.

The Bank was insured against loss due to payment of checks bearing forged endorsements, but the discovery of the forgeries occurred so long after their perpetration that the Bank was unable to give timely notice and the insurance company denies obligation.

Upon substantial evidence, the District Court found the foregoing facts; also, that the Bank was justified in believing the proceeds of the checks were to be used for Corbett's benefit; that Corbett was grossly negligent in handling his business affairs; and that his negligence and over-confidence in Miss Kleinsmith together were responsible for the belated discovery of her defalcations. The Court was of the opinion that appellants did not show the existence of any fund in which they were entitled to an equitable interest against the Bank as claimed and, consequently, held that appellants, though entitled to decrees against Miss Kleinsmith and the McGiverin-Haldeman Company, had no cause of action against the Bank.

 It is well settled that a drawee bank is not contractually liable to the payee of a check, in the absence of certification, because there is no privity of contract. National Bank of the Republic v. Millard, 10 Wall. 152, 19 L.Ed. 897; First National Bank of Washington v. Whitman, 94 U.S. 343, 24 L.Ed. 229. Appellants do not deny the existence of this rule, but contend that a drawee who pays an instrument upon a payee's forged endorsement is liable in tort to the payee for conversion of the instrument, relying upon Amerton Hotel Corporation v. National City Bank, 135 Misc. 793, 239 N.Y.S. 595, and Fidelity & Deposit Co. v. Bank of Charleston, 4 Cir., 267 F. 367. The view announced in these cases has been repudiated in Michigan on the ground that the drawing of a check does not operate as an assignment of the drawer's funds, Lonier v. State Savings Bank, 149 Mich. 483, 112 N.W. 1119; Gordon Fireworks Co. v. Capital Nat. Bank, 236 Mich. 271, 210 N.W. 263; but appellants contend that these decisions are not controlling here, because the Bank, through Miss Reiman, knew Corbett had not personally endorsed the checks, and, consequently, knew or should have known Miss Kleinsmith was misappropriating Corbett's funds. We are of the opinion that this fact is insufficient to support appellants' claim, in view of Corbett's negligence, his frequent and somewhat ostentatious expressions of confidence in Miss Kleinsmith and his known extensive reliance upon her to conduct his business. We think the posi-

tion of appellants is no better than it would have been had the loss occurred without fault of either party, in which event the Michigan decisions would deny appellants recovery from the Bank.

It is true that the payee has been allowed, in Michigan and elsewhere, to recover from the drawee when payment has been made upon a forged endorsement of the payee, if the drawee has been put upon notice that the proceeds are being misappropriated. McIntosh v. Detroit Savings Bank, 247 Mich. 10, 225 N.W. 628; Oklahoma State Bank v. Galion Iron Works & Mfg. Co., 8 Cir., 4 F.2d 337; Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934; United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S.W. 414. But this rule can not be applied to the case at bar, because the District Court has found, upon ample evidence, that Miss Reiman acted in good faith and was justified in her belief that the proceeds of the checks were being used in Corbett's business and for his benefit.

Urging that the Bank's issuance of the cashier's checks to Miss Kleinsmith is analagous to a Bank's issuance of certificates of deposit to an agent who has forged his principal's endorsement, appellants claim the rule of those cases is applicable which permit a payee to recover when the drawee knows the agent is converting the payee's funds. We are of the opinion that requests for payment in the form of cashier's checks have no more tendency to notify the drawee of misappropriations than do requests for payment in cash. Besides, the Court has found, upon sufficient evidence, that the Bank believed the proceeds were being used for Corbett's benefit.

■ Another contention of appellants is that the Bank undertook not only to recognize no other signatures than those of Olfs and Corbett as drawers upon the Ravendale account, but that it would recognize no other signatures in any transactions whatever on Corbett's account. This contention is based upon the deposit agreement, which provides that "The signature of persons authorized to draw checks which you will recognize in payment of funds or the transaction of other business on our account

are given below," and is followed by the signatures of Corbett and Olfs. We are of the opinion that this contention is without merit; the language of the agreement restricts its scope to checks drawn upon the Ravendale account.

■ Appellants' final contention is that the receipts from their properties in equity belong to them, especially since their agreement required the McGiverin-Haldeman Company to deposit collections in a separate account and remit monthly therefrom. The McGiverin-Haldeman Company was, however, heavily indebted to the Bank, and claims that its right to set-off this indebtedness against the balance standing in its name prevents appellants from asserting equitable ownership. Appellants do not deny the general rule to be that a bank may appropriate a depositor's balance to payment of his indebtedness, or set off its claim if sued by him, but they claim this rule is inapplicable here, relying upon Central Nat. Bank v. Insurance Company, 104 U.S. 54, 26 L.Ed. 693, and Union Stock Yards Bank v. Gillespie, 137 U.S. 411, 11 S.Ct. 118, 34 L.Ed. 724. In those cases, the Bank had notice of the circumstances giving rise to the equitable ownership; but, in this case, the McGiverin-Haldeman Company maintained no separate account, and appellants have not shown that the Bank knew of its promise to maintain such an account or knew which, if any, of its deposits were receipts from the Ravendale properties. In their attempt to establish knowledge on the part of the Bank, appellants rely upon the fact that to obtain loans the Company several times submitted financial statements showing liabilities, such as "accounts payable," "collections to various land companies" and, on one occasion, "accounts payable Vincent Corbett." They also rely upon Miss Reiman's knowledge that Corbett was in the real estate business and the McGiverin-Haldeman Company was his agent for sales and collections. Such knowledge, we think, falls far short of informing the Bank as to what part, if any, of the various deposits in the Company's general commercial account were receipts from appellants' properties.

Judgment affirmed.