HYDROCARBON PROCESSING CORP., Plaintiff, *v.* CHEMICAL BANK NEW YORK TRUST COMPANY, Defendant.

First Department, February 20, 1964.

*Norman Winer* of counsel (*Kurt J. Wolff* with him on the brief; *Nathan, Mannheimer, Asche, Winer & Friedman,* attorneys), for plaintiff.

*Harry H. Voigt* (*Edwin A. Kilburn* with him on the brief; *Cravath, Swaine & Moore,* attorneys), for defendant.

WITMER, J. In this controversy submitted under rule 3222 of the Civil Practice Law and Rules (see Civ. Prac. Act,

§§ 546–547) plaintiff seeks to recover $2,467.63, the amount of a draft payable to it drawn on Industrial Commercial Premier, S. A. of Amagura 103, Havana, Cuba, hereinafter referred to as Premier, in payment for merchandise sold and shipped by plaintiff to Premier in 1959. At that time plaintiff deposited the draft with defendant for collection. Defendant, in the usual course of banking business forwarded the draft for collection to Banco Continental Cubano, hereinafter referred to as Banco, a Cuban bank with its principal office in Havana, Cuba. Premier duly paid the amount of the draft to Banco and Banco advised defendant that as soon as it could obtain permission from the Cuban Government to export the said amount, it would do so to defendant. Defendant promptly advised plaintiff thereof. The parties knew that funds in Cuba could not be sent to the United States without permission of the Cuban Government. Although defendant and Banco duly endeavored to obtain the transfer of said funds for the plaintiff, the Cuban Government never gave authorization to Banco to send them to defendant.

In 1958 Cuban Electric Co., hereinafter referred to as Electric, owed $750,000 to defendant. In 1960 the Government of Cuba nationalized Electric and seized all of its assets and assumed its liabilities; and it also nationalized Banco and merged its assets and liabilities with a corporation (Nacional) wholly owned and controlled by the Government of Cuba. Prior to such nationalization of Banco it had to its credit in Whitney National Bank in New Orleans, Louisiana, hereinafter referred to as Whitney, the sum of $38,607.43. After the nationalization of Banco, Whitney instructed defendant to charge Whitney's account with defendant with such sum of $38,607.43 and credit Banco therewith at defendant's branch in London, England, which defendant did. Shortly thereafter defendant's London branch transferred said credit of $38,607.43 to defendant's main office in New York, which credited the amount to Nacional on Electric's indebtedness to defendant. Plaintiff contends that before defendant could apply said $38,607.43 to Electric's indebtedness to defendant, it had the duty to pay to plaintiff the amount which Banco had collected from Premier, to wit, $2,467.63. Alternatively, plaintiff contends that defendant had the duty, at least, to let plaintiff share *pro rata* with defendant on their claims against Banco.

Defendant's duty to plaintiff with respect to the draft was to use ordinary care in forwarding it for collection and to obtain the funds for plaintiff which were paid on account of said draft (Negotiable Instruments Law, §§ 350-a, 350-d, 350-e).

Admittedly, defendant has performed that duty. Admittedly also, had Banco remitted to defendant the funds which it collected on said draft, defendant would then have had a continuing duty in its relationship with plaintiff to credit plaintiff therewith promptly. But this did not happen.

What occurred was that other funds of Banco came into defendant's control and defendant in substance retained them as a bank deposit credit to Banco for 24 days, without notifying plaintiff thereof. It was only after such 24-day period that defendant decided that, by reason of the nationalization of Banco and Electric, the debt of Electric to defendant could be paid from Banco's funds; and defendant so applied them.

Defendant justifies its conduct by contending that it would be too great a burden upon it or any commercial bank to be required to ascertain in its day-to-day transactions the status of all customer claims against a correspondent bank before it could apply funds of such bank to its own claims against it or to payment of any item to another bank in the regular course of business. In support of this position it cites cases where, after a promissory note has been protested for insufficient funds, a bank has been permitted to require the indorser to pay it, although after the protest the maker had sufficient funds in his account to pay it (*National Bank of Newburgh* v. *Smith,* 66 N. Y. 271; *Far Rockaway Bank* v. *Norton,* 186 N. Y. 484); and cases where a bank has received a draft to collect, and, while in good faith trying to find the drawee to accept it, charged the drawee's account with his indebtedness to the bank so that when the drawee was found his funds were insufficient to pay the draft, and yet the drawer was held to have no lawful grievance against the bank (*Thack* v. *First Nat. Bank & Trust Co.,* 206 F. 2d 180; *Balsa Ecuador Lbr. Corp.* v. *Security Nat. Bank,* 141 F. Supp. 470, 476).

Assuming, without deciding, that by analogy to the above holdings, defendant would be entitled as against the plaintiff to credit to its own claim against Banco funds coming to it in the daily course of business in payment of Banco's debt to defendant, that principle does not help defendant here, because this is not such a case.

Upon collection of the draft, Banco became indebted to plaintiff. Thereafter, as above noted, some of Banco's funds were on deposit with defendant for 24 days during which time, had plaintiff known thereof, it might have satisfied its claim against Banco therefrom. These funds were not received by defendant in payment of a debt by Banco to defendant. Although defend-

ant was not a fiduciary for plaintiff and did not become liable to plaintiff for the amount of the draft upon receipt of the Banco funds, it had a continuing agency duty to plaintiff in the exercise of ordinary care as a collecting bank (Negotiable Instruments Law, § 350-d) to advise plaintiff promptly that funds of Banco were in its possession available for plaintiff. This duty it failed to discharge; but, instead, while holding the funds of Banco for such period and continuing to withhold the performance of its duty to plaintiff, it concluded that the funds were properly applicable to Electric's debt to defendant.

The requirement that under the circumstances defendant should give notice to plaintiff of the availability of the Banco funds, cannot be said to endanger the facile conduct of ordinary banking business; and the need for the latter may not be used as a cloak to permit a bank, in a dominant position, to delay notice for such an extended period and then to prefer itself to the exclusion and detriment of its principal, the plaintiff.

In the existing posture of this case, we do not deem it appropriate to consider whether under other circumstances plaintiff could only share proratably with defendant in said funds.

We hold, therefore, that to the extent of its claim plaintiff has the prior right in said funds in the hands of defendant.

RABIN, J. P. (dissenting). I dissent and vote to grant judgment in favor of the defendant. The plaintiff may not recover on this agreed statement of facts.

The primary duty of the defendant bank was to forward the draft to its correspondent bank for collection and to transmit the proceeds of the draft, if received. Although Banco, the correspondent bank, did collect the amount of the draft it did not forward the proceeds to the defendant due to its inability to obtain the requisite permission of the Cuban Government to transmit the funds. At that point it cannot be said that Banco was remiss in its obligation to either the defendant or to the plaintiff. The obligation of Banco was to use reasonable efforts to collect the draft and transmit the funds when collected. However, in the circumstances of this case its duty to transmit was not an absolute one. Its ability to transmit — and consequently its duty to do so — was limited by the regulations of the Cuban Government — known to all parties to this transaction at the time the draft was placed for collection. Indeed, the limitations were known to the plaintiff at the time it made its original sale. Banco was not obliged to violate the laws of its country. The limit of the obligation of Banco was to use reasonable efforts to

obtain authorization of the Cuban Government to transmit the funds. It owed neither the plaintiff, nor the defendant, any greater obligation. The submission does not allow for a conclusion that it failed in that duty.

Having failed to transmit the funds did Banco thereby become a debtor of the plaintiff, making any of its funds outside Cuba subject to seizure in satisfaction of such debt? I do not think so. To so hold would in effect prevent any collecting bank from doing its routine business if, by the law of the sovereignty having jurisdiction over it, it is prevented from remitting after the collection of a draft. I do not think that such a holding would be conducive to free international commercial intercourse and we should not so hold.

Be that as it may, however, the situation changed upon the nationalization of Banco. The Cuban Government, having taken over Banco's obligations, became obliged to transmit the proceeds of the draft. It was within its power to do so. What was the duty of the defendant toward the plaintiff in the changed circumstances, when funds formerly belonging to Banco came into its possession? It should be noted that the bank's primary duty was to pay the proceeds of the draft, if and when such proceeds were transmitted to the bank. It was not under any duty to enforce collection through the seizure of funds not so transmitted. It was not obliged to adjudicate the rights of the plaintiff as against Banco or the Cuban Government or for that matter of other possible creditors of Banco or Cuba and enforce collection for the benefit of the plaintiff through the seizure of the funds in its possession. It was for the plaintiff to establish its claim against the debtors and subsequently enforce its rights against these funds — funds not transmitted in payment of the draft.

But, the plaintiff says, it was prevented from doing so because of the failure of the defendant to notify it that such funds had come into the bank's possession, asserting that it was the duty of the defendant to immediately notify the plaintiff of the acquisition of such funds so as to enable it to take such steps as it might have deemed advisable to protect its interest. It is contended that the bank, having failed to do so, thereupon became liable to the plaintiff for the amount of the draft. The defendant urges that it would place an intolerable burden upon banks to impose upon them the obligation to be on a constant lookout to ascertain whether there are any outstanding claims against the correspondent bank each time such a bank makes a deposit for purposes other than in payment of such outstanding claim. That may be so. However, assuming that the defendant had

such an obligation*, and assuming further that it then became its duty to notify the plaintiff of the presence of Banco funds, I cannot see how, failing in that duty, the defendant was thereupon obliged to apply those funds for the plaintiff's benefit.

We need not here decide whether the defendant had a right to appropriate the funds deposited to its own account. Of course, if it rightfully did so then plaintiff has no claim. On the other hand if it wrongfully appropriated such funds to its account it does not necessarily follow that it had to turn the money over to the plaintiff. It was for the plaintiff to establish its claim and pursue collection as against its debtor. Nor does the agreed statement of facts allow for a conclusion that the plaintiff was entitled to these specific funds — formerly belonging to Banco, subsequently nationalized. There may be others who have an interest in the specific funds — among them creditors of Banco or creditors of the Cuban Government. The statement of facts does not eliminate such possibility. We cannot impose upon the defendant the obligation to determine plaintiff's rights as against all others (leaving aside its own interest) and to act upon such determination. The defendant cannot be expected to expose itself to the risk of turning over these funds to the plaintiff.

At best, if the defendant had any obligation toward the plaintiff at all, in the circumstances, it was to notify it that funds of Banco had come into its possession. Its failure to so notify the plaintiff would then constitute a breach thereof. But what are the consequences of such breach? It is the plaintiff's position — and in such position it is supported by the majority — that it was then entitled to the amount herein claimed. I do not think so. The failure of the bank to notify the plaintiff constituted either negligence or a breach of its contract with the plaintiff. Breach of a duty — either in contract or in tort — does not without more entitle one to recover. It must also be shown that such breach resulted in damage. We may not " fine " the defendant the amount of the draft merely because it breached its duty to the plaintiff. We can only award the plaintiff the damage suffered because of such breach.

In my opinion the plaintiff has failed to show that it has been damaged. Had notice been given to the plaintiff its only rights would have been to take such steps — perhaps by way of attachment, or through the application of section 977-b of the

---

* It should be noted, however, that there is nothing in the submission to indicate that the defendant bank actually knew that there was an outstanding unpaid draft of the plaintiff at the time the Banco funds came into its possession.

350

Civil Practice Act or its successor sections in the Business Corporation Law, or otherwise — to protect its interests. What is to prevent the plaintiff from doing so now? It can do now what it could have done then had it been notified. Consequently, the plaintiff has not demonstrated that its rights have in anywise been impaired by the failure to notify it of the fact that funds of Banco had come into the defendant's possession. Accordingly on this submission, judgment cannot be for the plaintiff but must be for the defendant.

McNALLY, STEVENS and STEUER, JJ., concur with WITMER, J.; RABIN, J. P., dissents in opinion.

To the extent of its claim, plaintiff has the prior right in the funds in the hands of defendant. Judgment for plaintiff accordingly, with costs. Settle order on notice.

