Dye, J.
In September of 1959, the plaintiff, a creditor-vendor, in the course of trade, deposited a sight draft in the amount of $2,467.63 with the defendant for collection from the plaintiff’s debtor-vendee in Cuba. Although funds in payment of the draft *152 reached a Cuban bank, Banco Continental Cubano (hereinafter Banco), they have never been transmitted to the defendant or the plaintiff, initially for lack of a necessary export permit from the Currency Stabilization Fund in Cuba, and, eventually, due to the nationalization of Banco by the Cuban government in October of 1960. Significantly, the nationalization decree merged Banco’s assets and liabilities into Banco Nacional de Cuba (hereinafter Nacional), which is wholly owned, dominated and controlled by the Republic of Cuba and, by the same mandate, nationalized the Cuban Electric Company (hereinafter Electric), a Florida corporation operating as a public utility in Cuba, which, when nationalized, was indebted to the defendant on matured loans totaling $750,000.
The question now posed arose when, in November of 1960, the defendant received a cable from the Whitney National Bank of New Orleans, Louisiana, instructing it to charge WThitney’s account, maintained with the defendant, in the sum of $38,607.43, and to credit Banco with a like amount at the defendant’s branch office in London, England. The defendant complied and then, on its own initiative, (1) charged the Banco account in London for $38,607.43, credited the same amount to Nacional at its main office, and (2) charged the $38,607.43 against Nacional as an offset against Electric’s debt to itself. In other words, by treating Electric, Banco and Nacional as a single entity (Cuba) as a result of the nationalization, the defendant secured payment of a portion of Electric’s debt to itself.
The plaintiff asserts, and the Appellate Division has agreed in result, that the defendant has no right to offset the Banco credit against the Electric debt, that the plaintiff does have such a right, and that the defendant, as the plaintiff’s agent for collection, was obligated to either set off for the plaintiff or to give the plaintiff notice of the Banco credit so that the plaintiff might act for itself. Failure to give this notice allegedly makes defendant liable for the amount of the draft.
The effect of the Cuban nationalization and the propriety of the defendant’s act in appropriating the Banco credit to the Electric debt are irrelevant to the present question. The parties stipulated that payment by Banco to the defendant was subject to the prior approval of the Currency Stabilization Fund in Cuba. If the situation is to be altered as a result of the national *153 ization, it must be because the nationalization, in fact, nullified the possibility of obtaining the export permit and merged, as the parties agree it did, all the assets and liabilities of Banco into Nacional. If this be the case, then Electric, whose assets and liabilities were assumed by the same act, also became part of the same entity. In short, the plaintiff cannot take advantage of the confiscation to reach an otherwise unavailable Banco fund, and at the same time disown it to prevent the defendant from doing the same thing. Moreover, if the defendant acted improperly in appropriating the Banco credit, that wrong was a wrong against Banco or Cuba, and they are not parties to this suit. If the plaintiff is to recover from the defendant, it must show that the defendant, in its role as an agent for collection, breached a duty which it owed to the plaintiff, and it is of no avail to merely show that the defendant has improperly appropriated an unrelated fund.
A collecting bank owes its principal “ ordinary care ” in the discharge of its duty (Negotiable Instruments Law, § 350-d; Uniform Commercial Code, § 4-202). It is responsible for presenting an item or sending it for presentment, sending notice of dishonor or nonpayment after learning of nonpayment or nonacceptance, settling for an item, making necessary protest, and notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof (Uniform Commercial Code, § 4-202). The defendant bank fulfilled these requirements and, subject thereto, subdivision (3) of section A-202 of the code provides that “ a bank is not liable for the insolvency, neglect, misconduct, mistake or default of another bank or person or for loss or destruction of an item in transit or in the possession of others ’ ’.
Since drafts do not, of themselves, operate as an assignment of the funds of the drawee in the hands of a third party (see Thack v. First Nat. Bank & Trust Co., 206 F. 2d 180), it remains only to consider whether an extra-statutory obligation is properly applicable to these funds in the defendant’s hands or whether the defendant’s conduct with respect to these funds constitutes less than “ ordinary care ” within the meaning of section 4-202 of the code. Numerous factors militate against such a holding. As was pointed out in the dissenting opinion below, “To so bold would in effect prevent any collecting bank *154 from doing its routine business if, by the law of the sovereignty having jurisdiction over it, it is prevented from remitting after the collection of a draft. * * # [S]uch a holding would [not] be conducive to free international commercial intercourse ”. More significant difficulties are readily perceived. Each bank in the collecting chain would, in effect, become a guarantor of the draft— at least to the extent that they had possession of, or access to, other funds of a prior party who received payment. Due care for the protection of their own financial dealings with a drawee would often impel them to decline a part in the collection process, to say nothing of the difficulties inherent in correlating every collection item with their own accounts. The collection process does not lend itself to such a conclusion and cases have so held (Thack v. First Nat. Bank & Trust Co., supra; Balsa Ecuador Lbr. Corp. v. Security Nat. Bank, 141 F. Supp. 470; Jackson v. First Nat. Bank, 80 Cal. App. 733). Nor is this a case in which the facts tend to establish collusion or bad faith by the defendant (cf. Dern v. Kellogg, 54 Neb. 560). In Thack v. First Nat. Bank (supra, p. 183) the court stated the principle thusly: ‘ ‘ Although, as collecting agent for the drafts, the appellee bank owed appellants the duty of due diligence, good faith and impartiality, appellee was not necessarily precluded thereby from collecting its own debt by lawful means, so long as it was guilty of no bad faith. It owed appellants no duty to notify them that it was also a creditor of [the drawee] unless suppression of that fact would amount to bad faith, which, in the circumstances here present, it does not. Having acted in good faith and with due diligence in the performance of its duties as collecting agent, and being unable to pay appellants’ drafts because the drawee had not accepted them, appellee was at liberty to apply the [drawee’s] available funds to the payment of his debt to the bank ”. So in the present case, there is no question but that the appellant bank acted properly throughout the collection process and that the fund in dispute came into their possession in “ good faith ” through a transaction unrelated to the agency relationship. If, then, the defendant could properly apply the money to its own debt, at least as opposed to the plaintiff, there would be no purpose in requiring the bank to notify the plaintiff of the *155 fund’s existence, and no liability would flow from the failure to do so.
The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and judgment entered in favor of the defendant.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Scileppi and Bergan concur.
Order reversed, with costs in this court and in the Appellate Division, and matter remitted to the Appellate Division to direct the entry of a judgment in accordance with the opinion herein.